831 F.2d 1339
 18 Collier Bankr.Cas.2d 84, Bankr. L. Rep. P 72,009
KOCH REFINING, Koch Fuels, Conoco, Inc., Mobil Oil
Corporation, Chevron U.S.A. Inc., Tosco Corporation, Tenneco
Oil Company, Moore-McCormick Petroleum, Gulf States Oil &
Refining, Texaco, Inc., and Getty Refining and Marketing
Company, Plaintiffs-Appellants,
v.
FARMERS UNION CENTRAL EXCHANGE, INC., Farmers Petroleum
Cooperative, Inc., FCX, Inc., Landmark, Inc., Land O'Lakes,
Inc., Midland Cooperatives, Incorporated, MFA Oil Company,
and Tennessee Farmers Cooperative, Defendants-Appellees.
 No. 86-1102.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 11, 1987.
Decided Oct. 7, 1987.
 
 1
 Richard J. Mason, Levit & Mason, Ltd., Chicago, Ill., for plaintiffs-appellants.
 
 
 2
 David M. Schiffman, Sidley & Austin, Chicago, Ill., for defendants-appellees.
 
 
 3
 Before CUDAHY and COFFEY, Circuit Judges, and GRANT, Senior District Judge.*
 
 
 4
 GRANT, Senior District Judge.
 
 
 5
 This case comes to us on appeal from the district court's dismissal of a declaratory action brought by eleven petroleum corporations (oil companies), 56 B.R. 2420. The oil companies, appellants herein, had regularly exchanged petroleum products with Energy Cooperative, Inc. (ECI), an Indiana oil refinery now in bankruptcy. In their complaint they sought a declaration that, inter alia, the Member-Owners of ECI were the alter ego of ECI. The district court dismissed the oil companies' suit for lack of standing. For the reasons set forth below, we affirm that holding.
 
 I.
 
 6
 The Member-Owners, appellees in this case, are regional agricultural cooperatives that formed ECI in 1976 to insure a steady supply of petroleum products for their agricultural businesses in a period of instability and shortages in the petroleum industry. They own 100% of ECI's stock, comprise 100% of its board of directors, and are ECI's principal customers. The oil companies appealing herein provided ECI with petroleum products for its own use and for delivery to other customers when needed elsewhere.
 
 
 7
 On May 15, 1981, ECI filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Although neither the debtor nor the trustee in bankruptcy is a party to the present action, this case grew out of the bankruptcy of ECI.
 
 
 8
 In October 1981, ECI as debtor-in-possession brought separate actions against the oil companies to recover alleged preferences under Section 547 of the Bankruptcy Code. Those adversary proceedings contended that ECI made transfers of products and proceeds within the preferential ninety-day period prior to its filing of the bankruptcy petition, and that the trustee could thus recover nearly $50 million in value allegedly received by the oil companies during that period. ECI also sued the Member-Owners in an attempt to hold them liable for all of ECI's debts. In that litigation ECI alleged, inter alia, that the Member-Owners breached certain contracts with ECI; that they breached their fiduciary duties by preventing ECI from remedying the breaches of contract and by causing ECI to take other actions contrary to its best interests; and that the Member-Owners should be liable for all of ECI's debts as its "alter ego" under a "piercing the corporate veil" theory.
 
 
 9
 On May 31, 1984, ECI converted its Chapter 11 reorganization case to a Chapter 7 liquidation case. A trustee was appointed; he is pursuing each of these lawsuits in bankruptcy.[1]
 
 
 10
 On July 29, 1985, the oil companies filed this action in district court, seeking a declaratory judgment that ECI is the alter ego of the Member-Owners; that the Member-Owners are jointly and severally liable for ECI's debts; that ECI was solvent when it filed its bankruptcy petitions; and that the oil companies are entitled to recover from the Member-Owners all amounts that the bankruptcy trustee may recover from the oil companies as preferences. The Member-Owners filed motion to dismiss the complaint.
 
 
 11
 On December 23, 1985, the district court dismissed the oil companies' complaint against the Member-Owners. Koch Refining, et al. v. Farmers Union Central Exchange, Inc., 56 B.R. 242 (N.D.Ill., 1985). Basing its opinion upon a prudential aspect of standing, the court determined that the oil companies were not the proper proponents of the legal rights they asserted in their complaint. Order at 4 (citing Singleton v. Wulff, 428 U.S. 106, 112, 96 S.Ct. 2868, 2873, 49 L.Ed.2d 826 (1976)). We concur in that determination, and further find that appellants lack standing because they have not shown a substantial controversy between parties in a classically adverse relationship, id. at 113, 96 S.Ct. at 2873, of sufficient reality to warrant declaratory relief. Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969).
 
 II.
 
 12
 The district court found that the oil companies had raised essentially the same allegations as those made by the ECI trustee in bankruptcy proceedings. Order at 2. After reviewing the relationship among the oil companies, the debtor corporation and the Member-Owners, the court determined that the oil companies' status as "creditor or potential creditor" was not sufficient for standing. Order at 3. In addition to showing actual or threatened injury, stated the district court, the claimants must be the proper parties to bring a particular action. Order at 3-4.
 
 
 13
 To determine which party properly could assert this action, the court recognized first the right of a corporation to seek damages from its fiduciaries for mismanagement, misappropriation of assets, or breach of duty, and then the passing of that right to the corporation's trustee in bankruptcy.[2] Order at 4. Since the oil companies were not the proper parties to recover damages from the Member-Owners, who are the fiduciaries of ECI, the court held that they lacked standing to obtain declaratory relief. Id.
 
 
 14
 In this appeal the oil companies assert that they satisfy the constitutional requirements for standing because they are confronted with an actual threat of injury in the trustee's preference litigation against them, an injury that is likely to be redressed by a favorable decision here. They further allege that they, and not the trustee, are the proper parties to bring an alter ego action: Since that cause of action is neither property of the estate under 11 U.S.C. Sec. 541 nor an action encompassed by 11 U.S.C. Sec. 544 that would allow the trustee to act on behalf of creditors, the trustee does not have standing to raise it.
 
 
 15
 Article III of the United States Constitution requires that the party seeking judicial resolution of a case or controversy have standing to present his claim. The standing requirement focuses on the party bringing the claim. Warth v. Seldin, 422 U.S. 490, 500, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). Central to that requirement as well is the injury of the litigant bringing the action. Diamond v. Charles, 476 U.S. 54, 106 S.Ct. 1697, 1703, 90 L.Ed.2d 48 (1986). At an "irreducible minimum," the plaintiff must show that:
 
 
 16
 (1) the party "personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," (quoting Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979)); (2) the injury "fairly can be traced to the challenged action," of the defendants (quoting Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 41, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976)); and (3) the injury "is likely to be redressed by a favorable decision," (quoting Simon, 426 U.S. at 38, 96 S.Ct. at 1925).
 
 
 17
 Northside Sanitary Landfill, Inc. v. Thomas, 804 F.2d 371, 381 (7th Cir.1986) (quoting Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982)).
 
 
 18
 These requirements are imposed equally upon a party bringing an action for declaratory judgment as upon one seeking damages or coercive relief. As we have recently stated, in order to demonstrate standing for a declaratory judgment, a party must show "that she has sustained, or is in immediate danger of sustaining, a direct injury as a result of the defendants' conduct." Foster v. Center Township of LaPorte County, 798 F.2d 237, 242 (7th Cir.1986).
 
 
 19
 The district court's holding that the oil companies lack standing is based primarily upon its determination that a bankruptcy trustee is the successor to a corporation's right to assert a cause of action against fiduciaries for neglect of duty to the corporation. The oil companies insist, however, that a trustee is not the proper party to bring an alter ego action. The arguments presented in the briefs and at oral argument centered primarily upon the trustee's lack of standing rather than upon the oil companies' right to standing. In recognition of the integral relationship of the bankruptcy trustee to the parties herein, we must first consider the role of a bankruptcy trustee and his right to assert an alter ego claim.
 
 III.
 A.
 
 20
 A person who meets the eligibility requirements of 11 U.S.C. Sec. 321 of the Bankruptcy Code and various related bankruptcy rules may be appointed a bankruptcy trustee by the court. The role of trustee[3] as a representative of the estate, with the capacity to sue and be sued, is defined in section 323 of the Bankruptcy Code. The Code explicitly grants broad responsibilities to the trustee in collecting the debtor's assets and dealing with the bankruptcy estate. See, e.g., 11 U.S.C. Secs. 704, 721, 724, 725, 363, 364, 365. The trustee of a Chapter 7 debtor (to which ECI has converted) has the general duties of marshalling all available property, reducing it to money, distributing it to creditors, and closing up the estate. 11 U.S.C. Sec. 704(1).
 
 
 21
 The trustee represents not only the rights of the debtor but also the interests of creditors of the debtor. Pursuant to 11 U.S.C. Sec. 544 the trustee, in his capacity as a creditor, may bring suit to reach property or choses in action belonging to the estate that will then be distributed to all creditors. The trustee's single effort eliminates the many wasteful and competitive suits of individual creditors. However, his actions as creditor representative may be resented, and the trustee may have to respond to attacks by individual creditors. See 1 Cowans, Bankruptcy Law and Practice Sec. 2.7 at 72 (1986 Ed.). This difficult aspect of representing self-interested creditors has been long recognized. "[H]istorically one of the prime purposes of the bankruptcy law has been to bring about a ratable distribution among creditors of a bankrupt's assets; to protect the creditors from one another." Young v. Higbee Co., 324 U.S. 204, 210, 65 S.Ct. 594, 597, 89 L.Ed. 890 (1945).
 
 
 22
 Whether the trustee is representing the estate or "standing in the shoes" of the creditors, he has the duty to marshal the debtor's property for the benefit of the estate, and thus the right to sue parties for recovery of all property available under state law. He then distributes the amounts collected on a pro rata basis to all creditors in accord with the bankruptcy provisions and theme of "equality of distribution." Sampsell v. Imperial Paper & Color Corp., 313 U.S. 215, 219, 61 S.Ct. 904, 907, 85 L.Ed. 1293 (1941).
 
 B.
 
 23
 Section 541 of the Bankruptcy Code, which creates the bankruptcy estate, offers an expansive definition of property comprising the estate: Whatever "legal and equitable interests" the debtor had in property as of the filing of the bankruptcy petition is property of the bankruptcy estate. The debtor's interest in property is determined by nonbankruptcy law, but the determination of what constitutes section 541 property is a federal question. H.R.Rep. No. 595, 95th Cong., 1st Sess. 367-68 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 82-83 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. Once the bankruptcy petition has been filed, property rights belonging to a debtor under state law become assets of the estate. Butner v. United States, 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979); Matter of Kaiser, 791 F.2d 73, 74 (7th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 655, 93 L.Ed.2d 710 (1986).
 
 
 24
 Courts have regularly applied section 541 broadly to include property fraudulently or improperly transferred by the debtor before bankruptcy. Sampsell, 313 U.S. at 221, 61 S.Ct. at 908; Carlton v. BAWW, Inc., 751 F.2d 781, 785 (5th Cir.1985); In re MortgageAmerica Corp., 714 F.2d 1266, 1275 (5th Cir.1983); In re Mishkin, 58 B.R. 880, 882 (Bankr.S.D.N.Y.1986). Creditors' fraud claims brought under the Racketeer Influenced and Corrupt Organizations Act (RICO) have been found to be section 541 property assertable only by the trustee. Dana Molded Products, Inc. v. Brodner, 58 B.R. 576, 578 (N.D.Ill.1986). See Warren v. Manufacturers National Bank of Detroit, 759 F.2d 542, 545 (6th Cir.1985). And a creditor's action for fraudulent creation of a new entity for debt avoidance purposes has been properly asserted by the bankruptcy trustee. Lumbard v. Maglia, Inc., 621 F.Supp. 1529, 1536, 1541 (S.D.N.Y.1985).
 
 
 25
 It has also long been held that rights of action against officers, directors and shareholders of a corporation for breaches of fiduciary duties, which can be enforced by either the corporation directly or the shareholders derivatively before bankruptcy, become property of the estate which the trustee alone has the right to pursue after the filing of a bankruptcy petition. Pepper v. Litton, 308 U.S. 295, 306-07, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939); Mitchell Excavators by Mitchell v. Mitchell, 734 F.2d 129, 131 (2d Cir.1984); Bayliss v. Rood, 424 F.2d 142, 146 (4th Cir.1970).[4] The section 541 estate has been found to include any actions that a debtor corporation may have to recover damages for fiduciary misconduct, mismanagement or neglect of duty, and the bankruptcy trustee succeeds to that right for the benefit of all creditors of the estate. Delgado Oil Co., Inc. v. Torres, 785 F.2d 857, 860 (10th Cir.1986).
 
 
 26
 A thorough study of the broad parameters of section 541 property was presented by the Fifth Circuit Court of Appeals in In re MortgageAmerica Corp., 714 F.2d 1266 (5th Cir.1983). In that case, a creditor brought suit against the individual controlling an insolvent corporation by asserting three state law claims based upon fraudulent conveyances. The Fifth Circuit found that the claims asserted by the creditor actually belonged to the debtor corporation and were assertable only by the trustee. Id. at 1275. The court recognized the breadth of "property of the estate" and relied upon the fundamental bankruptcy policy of equitable distribution to all creditors that should not be undermined by an individual creditor's claim. Id. at 1276.
 
 
 27
 An alter ego claim also frequently involves improper or fraudulent actions by fiduciaries of a corporation. However, appellants assert that such an action cannot be considered section 541 property of the corporation's bankruptcy estate, for it can be brought only by those injured by the misuse of the entity's corporate form. To determine the validity of this allegation, we must examine the theory of alter ego and its definition under state law.
 
 
 28
 The alter ego doctrine is used in certain situations to displace the basic principle of the law of corporations that a corporation and its shareholders are separate legal entities with limited liabilities. When certain state-governed requirements are met, the alter ego theory allows the legal distinction between a corporation and its shareholders, directors and officers to be disregarded or set aside in order to reach the assets of those individuals "behind the corporation." The general reason for allowing the corporation's "veil to be pierced," for recognizing that the corporation is a "fictitious entity" which is simply a business conduit of another entity, and for holding its shareholders personally liable is usually an equitable one: There is a need to secure a just determination. See 18 Am.Jur.2d Corporations Secs. 45, 46, 50, 51, 52 (1986); 3 Cowans Sec. 16.7.
 
 
 29
 This court has recently examined the alter ego doctrine in Matter of Kaiser, 791 F.2d 73 (7th Cir.1986) (Posner, J.).[5] In that decision, we acknowledged the principle of separate corporate identity, the value of limited liability to our capitalist system, but also the need to extinguish the legal separateness of the corporation from its individual members or shareholders whenever limited liability would "defeat some strong equitable claim." Id. at 75. Kaiser recognized that, under Wisconsin law, "creditors could have pierced the [debtor's] veil under a misrepresentation rationale, and the trustee stands in their shoes." Id. at 76. See also In re K & L Ltd., 741 F.2d 1023 (7th Cir.1984); Matter of Palmer Trading Post, 695 F.2d 1012 (7th Cir.1982).[6]
 
 
 30
 State law determines whether property is an asset of the debtor. In re Brass Kettle Restaurant, Inc., 790 F.2d 574, 575 (7th Cir.1986). To determine whether this alter ego action is property of the debtor or of the appellants, therefore, we must turn to the law of the state in which legal or equitable title to the cause of action is asserted. However, neither the parties' briefs nor the record of this case identified the controlling state. Since it could be Indiana (the location of the debtor ECI) or Illinois (the venue of this cause and of the bankruptcy proceedings), we will examine the laws of each state. Matter of Kaiser, 791 F.2d at 74; In re K & L Ltd., 741 F.2d at 1030 n. 7.
 
 
 31
 In Indiana, the corporate veil will be pierced "where one corporation is so organized and controlled and its affairs so conducted that it is a mere instrumentality or adjunct of another corporation." Extra Energy Coal Co. v. Diamond Energy and Resources, Inc., 467 N.E.2d 439, 441 (Ind.Ct.App.1984). Nevertheless, Indiana courts will disregard corporate identity "only to protect innocent third parties from fraud or injustice when transacting business with a corporate entity." Id. at 441-42. Evidence indicative of an alter ego relationship includes misrepresentation, agency relationship, or intermingling of corporate identities or funds. Id. at 442.
 
 
 32
 Recognizing that "there is no one talismanic factor that a court can find to exist which will with impunity justify it in piercing the corporate veil," Indiana courts carefully review "the entire relationship between parent and subsidiary" to determine whether the corporate entity should be disregarded. Burger Man, Inc. v. Jordan Paper Products, Inc., 170 Ind.App. 295, 352 N.E.2d 821, 834 (1976).
 
 
 33
 The law of Illinois is quite similar. It requires two traditional factors to be shown before a corporate veil can be pierced:
 
 
 34
 first, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and second, circumstances must be such that an adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice.
 
 
 35
 Gallagher v. Reconco Builders, Inc., 91 Ill.App.3d 999, 1004, 47 Ill.Dec. 555, 558-59, 415 N.E.2d 560, 563-64 (1980). This court has recently analyzed the Illinois alter ego test and has recognized that the second element requires "either the sanctioning of a fraud (intentional wrongdoing) or the promotion of injustice." Van Dorn Co. v. Future Chemical and Oil Corp., 753 F.2d 565, 570 (7th Cir.1985).
 
 
 36
 The degree of control one entity holds over another has been measured in Illinois by evidence of misrepresentation; commingling of funds, assets, or identities; undercapitalization; failure to operate at arm's length; and failure to comply with corporate formalities. Main Bank of Chicago v. Baker, 86 Ill.2d 188, 56 Ill.Dec. 14, 22, 427 N.E.2d 94, 102 (1981).
 
 
 37
 Because disregard of the corporate entity is essentially an equitable doctrine, application of the theory will depend upon the circumstances in each case. Stap v. Chicago Aces Tennis Team, Inc., 63 Ill.App.3d 23, 20 Ill.Dec. 230, 234, 379 N.E.2d 1298, 1302 (1978).
 
 
 38
 In each state, the alter ego relationship is a question of fact to be determined by the circumstances of each case. See also Southport Petroleum Co. v. NLRB, 315 U.S. 100, 106, 62 S.Ct. 452, 455, 86 L.Ed. 718 (1942). In each state, either the sanctioning of fraud or the promotion of injustice is one criterion. The other criterion is virtually the same: In Indiana, one corporation must be a "mere instrumentality or adjunct of another;" in Illinois, the "interest and ownership" of the two entities are so united that "separate personalities ... no longer exist."
 
 
 39
 Both states use similar factors in determining whether to disregard the corporate entity. Despite certain differences in the factors required, "[w]hat the formula comes down to, once shorn of verbiage about control, instrumentality, agency and corporate entity, is that liability is imposed to reach an equitable result." Brunswick Corp. v. Waxman, 599 F.2d 34, 36 (2d Cir.1979). Neither state has suggested that specific parties have standing to make the allegations of alter ego and to present evidence which might establish such a relationship. In each state, the alter ego theory is an equitable, remedial doctrine that may be asserted by any creditor without regard to the specific nature of his relationship with the corporation and its alleged alter ego. See In re Western World Funding, Inc., 52 B.R. 743, 775 (Bankr.D.Nev.1985).
 
 
 40
 This court previously recognized the bankruptcy trustee, representing creditors, as the proper party to bring an alter ego claim under Wisconsin law. Matter of Kaiser, 791 F.2d at 76. We now find that, under Illinois and Indiana law as well, a bankruptcy trustee can bring an alter ego claim of action.[7] State law permits the alter ego claim to be asserted by the trustee in pursuing all funds available as section 541 property of the estate. And federal bankruptcy law permits the trustee to recover property on behalf of all creditors for equitable distribution. Furthermore, this logical procedure obviates multiple liability of the debtor to separate creditors and accords with the Bankruptcy Code's ultimate goal of balancing the equities and interests of all affected parties in a bankruptcy case.
 
 C.
 
 41
 Appellants have offered three cases to support their assertion that a corporation does not pierce its own veil, and that a corporation's trustee therefore cannot bring an alter ego cause of action. They first rely upon a New York bankruptcy case, In re Curtina International, 15 B.R. 993 (Bankr.S.D.N.Y.1981). In Curtina, the bankruptcy court held that it did not have jurisdiction over a creditor's alter ego claim against two corporate officers because that action "does not relate to or affect the administration of this bankruptcy case and is merely a private controversy exclusively between third parties in which the trustee asserts no interest." Id. at 996.
 
 
 42
 Like the creditor in Curtina, the oil companies insist that they can pierce the corporate veil of the debtor in this private nonbankruptcy controversy because they seek to recover assets "neither ... for the estate nor from the estate."[8] Id. at 995.
 
 
 43
 However, Curtina differs significantly in its facts from the case herein. In Curtina, both trustee and creditor sought to attach the property of individual principals of the debtor corporation, but they resorted to different causes of action. The trustee's adversary proceeding was based upon allegations of fraudulent conveyances of the debtor's property; the creditor's claim was founded upon an alter ego theory. The trustee neither challenged the creditor's right to recover from the debtor's fiduciaries nor asserted any interest in the creditor's recovery.
 
 
 44
 It has long been established that a trustee has the authority to prosecute or to decline to bring an action on behalf of the estate. Bankruptcy Rule 6009. The trustee may abandon an action to a third party, and that party may then pursue it.[9] However, if the claim is not abandoned by the trustee and a third party attempts to prosecute, such law suits have usually been dismissed.[10] Matter of Consolidated Bancshares, Inc., 785 F.2d 1249, 1253-54 (5th Cir.1986); Mitchell Excavators by Mitchell v. Mitchell, 734 F.2d at 132.
 
 
 45
 The Curtina trustee chose not to assert an alter ego claim and determined that the creditor's pursuit of his action was a private controversy in which he had no interest. Curtina does not hold that a trustee lacks standing to assert an alter ego claim, nor that an alter ego claim cannot be property of an insolvent corporation's estate.
 
 
 46
 The oil companies have also cited Stodd v. Goldberger, 73 Cal.App.3d 827, 141 Cal.Rptr. 67 (1977) for the proposition that the trustee has no standing to assert an alter ego claim against the debtor's principals because such claims belong to the creditors. However, the California court's decision is much narrower, and in fact assumes the trustee's right to standing unless he fails to assert injury to the corporation.
 
 
 47
 Plaintiff, as trustee in bankruptcy of a bankrupt corporation, cannot maintain an action against defendants on an alter ego theory absent some allegation of injury to the corporation giving rise to a right of action in it against defendants. In the absence of any such allegations, the asserted cause of action belongs to each creditor individually.
 
 
 48
 Stodd, 73 Cal.App.3d at 833, 141 Cal.Rptr. 67 (emphasis added).
 
 
 49
 A fairer rephrasing of the Stodd ruling is that, if a trustee of a bankrupt corporation has an interest in recovering from nondebtor fiduciaries on an alter ego theory, he must allege injury to the corporation giving rise to a right of action in alter ego against the fiduciaries.
 
 
 50
 The last case upon which appellants rely is an unreported opinion of the Tennessee Court of Appeals, Brown v. Vencap Investment Corporation and Morton Kent, Docket No. 556 (Hamilton Law), (Tenn.Ct.App. Mar. 31, 1984). In this case, the trustee's complaint, brought on behalf of both the debtor corporations and the creditors, contained allegations of mismanagement, alter ego and breach of fiduciary duty. At trial, a jury found for the trustee and assessed both compensatory and punitive damages against Vencap and its president, Morton Kent. Slip op. 11, 14.
 
 
 51
 On appeal, the court considered the issue to be the trustee's standing to maintain actions specifically on behalf of the debtor corporations or on behalf of the creditors. It allowed the trustee to bring suit alleging breaches of fiduciary duty on behalf of the debtors, since causes of action against fiduciaries are held by the corporation and can be asserted by a corporation's trustee. Slip op. 11, 31. But it rejected the trustee's right to bring the claim on behalf of the creditors, for creditors lack privity to sue fiduciaries. See slip op. 11, 29-31.
 
 
 52
 According to the Tennessee court, the majority rule seemed to be that an alter ego action vested in the individual creditors; therefore it addressed the trustee's standing to bring an action only on behalf of creditors. Slip op. 11, 14. Relying on pre-Bankruptcy Code case law and on Vencap's proffered interpretation of the legislative history,[11] it concluded that a trustee lacks standing to assert claims on behalf of creditors against third parties. Slip op. 11, 26-28.
 
 
 53
 The state court considered the different postures of various creditors of the bankrupt corporations in light of the state alter ego rule. It pointed out that one creditor in particular could not recover in his own right on the alter ego theory. Slip op. 11, 28. Because of the great difficulties in determining whether each creditor might have such a cause of action, the court finally concluded that a trustee could not maintain such an action on behalf of creditors.[12] Slip op. 11, 28-29, 31.
 
 
 54
 State law governs the causes of action that can be asserted by a bankruptcy trustee and by creditors. This court does not presume to comment on the Tennessee appellate court's interpretation of its own laws. However, appellants herein seek to adopt the Vencap holding to the circumstances of this case, as justification for the general proposition that a trustee's limited capacity does not allow him to bring an alter ego claim on behalf of creditors. This approach, if broadly applied, reflects a basic misunderstanding of the trustee's role in bankruptcy. It is axiomatic that the trustee has the right to bring any action in which the debtor has an interest, including actions against the debtor's officers and directors for breach of duty or misconduct. Pepper v. Litton, 308 U.S. at 307, 60 S.Ct. at 245. In that capacity, the trustee acts to benefit the debtor's estate, which ultimately will benefit the debtor's creditors upon distribution. He also has creditor status under section 544 to bring suits for the benefit of the estate and ultimately of the creditors. See Matter of Kaiser, 791 F.2d at 76; In re Western World Funding, Inc., 52 B.R. at 773-74.
 
 
 55
 However, the trustee has no standing to bring personal claims of creditors. A cause of action is "personal" if the claimant himself is harmed and no other claimant or creditor has an interest in the cause. But allegations that could be asserted by any creditor could be brought by the trustee as a representative of all creditors. If the liability is to all creditors of the corporation without regard to the personal dealings between such officers and such creditors, it is a general claim. See 3A Fletcher Cyc Corp Secs. 1134, 1277.1 (rev. perm. ed. 1986).
 
 
 56
 A trustee may maintain only a general claim. His right to bring a claim "depends on whether the action vests in the trustee as an assignee for the benefit of creditors or, on the other hand, accrues to specific creditors." Cissell v. American Home Assurance Co., 521 F.2d 790, 793 (6th Cir.1975), cert. denied, 423 U.S. 1074, 96 S.Ct. 857, 47 L.Ed.2d 83 (1976) (trustee lacked standing to seek performance of an insurance policy on behalf of certain specific creditors of the debtor). See also Cumberland Oil Corp. v. Thropp, 791 F.2d 1037 (2d Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 436, 93 L.Ed.2d 385 (1986).
 
 
 57
 The equally valid mirror-image principle is that a single creditor may not maintain an action on his own behalf against a corporation's fiduciaries if that creditor shares in an injury common to all creditors and has personally been injured only in an indirect manner. Delgado Oil Co., Inc. v. Torres, 785 F.2d 857, 861 (10th Cir.1986) (liability of the corporation's fiduciary for violating a trust relationship applied to all creditors); Ford Motor Credit Co. v. Minges, 473 F.2d 918, 920-21 (4th Cir.1973) (right of action for directors' negligent mismanagement may only be maintained in name of corporation or its receiver if insolvent); Dana Molded Products, Inc. v. Brodner, 58 B.R. 576, 580 (N.D.Ill.1986) (creditor may not bring action against corporation's fiduciaries where the creditor is harmed indirectly); In re Western World Funding, Inc., 52 B.R. at 773 (action for fiduciary misconduct must be brought in the name of the corporation for the benefit of all persons entitled to participate in the recovery).
 
 
 58
 To determine whether an action accrues individually to a claimant or generally to the corporation, a court must look to the injury for which relief is sought and consider whether it is peculiar and personal to the claimant or general and common to the corporation and creditors. In the oil companies' complaint, the two allegations of injury are these:
 
 
 59
 (d) That the Member-Owners are now jointly and severally liable to ECI's estate and to its creditors because of the Member-Owners' misuse of ECI and of ECI's corporate form;
 
 
 60
 (e) That the Plaintiffs are entitled to recover from the Member-Owners ... due to the Member-Owners' manipulation of ECI to the detriment of plaintiffs.
 
 
 61
 The injury alleged by the oil companies, it can be clearly seen, is to the corporation directly and to the oil companies indirectly. The trustee's complaint, as well, underscores that the debtor is a victim of the Member-Owners and has been harmed directly. The oil companies are only indirect or secondary victims; they have alleged nothing about their detrimental position that is peculiar and personal to them and not shared by ECI's creditors.
 
 
 62
 A Nevada bankruptcy court thoroughly considered similar issues in In re Western World Funding, Inc., 52 B.R. 743 (Bankr.D.Nev.1985). Although its determinations are not binding upon this court, its well-reasoned approach is noteworthy. In that case, the trustee's complaint contained allegations of breach of fiduciary duty, conversion of corporate assets, and alter ego. Defendants, controlling fiduciaries of the debtor, argued that the trustee was not authorized to bring the alter ego claim by either section 541 or 544(a) because it is a right of action which belongs to creditors personally. The bankruptcy court found that the trustee had standing to bring the alter ego action on several grounds. First, the trustee had the right to sue the debtor's fiduciaries under section 544 on behalf of all creditors, for it was they who should benefit from any recovery. Id. at 774. Under Nevada law, he could invoke the alter ego doctrine as a hypothetical lien creditor establishing the extent of his lien on all property which a creditor might reach to bring into the expansive section 541 definition of "property of the estate." Id. at 783. He could also use the doctrine, as the representative of the debtor's estate, to establish whether the assets of the alleged alter ego are subject to his administration because the debtor has an equitable interest in them. Id. at 783-84. And finally, the trustee is an "independent voice" protecting the creditors of the bankrupt corporation by asserting the alter ego claim against fiduciaries who would virtually never institute an action against themselves. Id. at 784.
 
 
 63
 In the case now before us, the complaint of these appellants alleges no harm specific to them personally, no loss to them in their individual capacities. (In contrast, the trustee's complaint in the bankruptcy proceedings has specified facts and circumstances to support its assertion that the corporation itself has been directly injured by misuse of the corporate form by fiduciaries.) In fact, at this point the oil companies show no harm from actions of the Member-Owners or of ECI, which had fulfilled its obligations to the oil companies in full prior to the bankruptcy. The injury they allege is the trustee's lawsuit against them.
 
 
 64
 If the trustee succeeds in his preference action and recovers the amounts conveyed to the oil companies within the preference period, the oil companies will become creditors and will certainly seek reimbursement of those transfers. However, even in that posture they allege no personal injury; they are similarly situated to other creditors who have been treated inequitably by the debtor and thus share in the common injury.
 
 D.
 
 65
 One area of the Bankruptcy Code that explicitly recognizes the right of a bankruptcy trustee to bring an alter ego claim against fiduciaries of the debtor is 11 U.S.C. Sec. 510, "Subordination." Section 510 was created in the 1978 Code as a codification of long-standing case law empowering the bankruptcy courts to subordinate any valid claim against the bankruptcy estate "when principles of equity would be offended by the allowance of such claims on a parity with those of other creditors." 3 Collier on Bankruptcy p 510.01 at 510-3. This ability to classify or rank claims reflects the essence of the court's broad equitable powers by which the overall result of a bankruptcy proceeding is assured of being inherently fair to all the interested parties.
 
 
 66
 A debtor corporation's officers, directors and controlling shareholders are "insiders" of the debtor as defined in 11 U.S.C. Sec. 101(28). Any transactions between a debtor and an insider of the debtor are subject to heavy scrutiny. 2 Collier on Bankruptcy p 101.28 at 101-42.14. If the trustee (or another interested party) can give evidence of an insider's domination and control of the debtor corporation and can show that the corporation is a "mere instrumentality" of the insider and that other creditors have been prejudiced by the insider's conduct, the court will pierce the corporate veil. See 3 Collier on Bankruptcy p 510.05 at 510-12. If the court finds that such dealings are inherently unfair, it is within its equitable powers to subordinate or disallow the insider's claims pursuant to section 510(c).
 
 
 67
 The Supreme Court's landmark bankruptcy decision Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939), is the classic presentation of the doctrine of equitable subordination and the clearest expression of a bankruptcy court's broad equitable powers. In it the Court reversed the appellate ruling and upheld the district court's determinations that a debtor corporation and its owner were "in reality the same," id. at 301, 60 S.Ct. at 242, and that the owner's claim was properly disallowed or subordinated. Id. at 311, 60 S.Ct. at 247.
 
 
 68
 In the exercise of its equitable jurisdiction the bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate. And its duty so to do is especially clear when the claim seeking allowance accrues to the benefit of an officer, director, or stockholder.
 
 
 69
 Id. at 307-08, 60 S.Ct. at 246.
 
 
 70
 The Pepper court emphasized that the fiduciary role of directors or stockholders is based upon their "powers in trust." If their dealings with the corporation are challenged, they have the burden of proving the good faith and inherent fairness of the transaction. "The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain. If it does not, equity will set it aside." Id. at 306-07, 60 S.Ct. at 245.
 
 
 71
 The broad factors suggested by the court for subordination of a fiduciary's claim are quite similar to the basic alter ego requirements;[13] and in both cases "liability is imposed to reach an equitable result." Brunswick Corp. v. Waxman, 599 F.2d at 36. The court acknowledged with approval the use of equitable subordination when the facts showed that the debtor has been used merely as a corporate pocket of the dominant stockholder, id. at 309, 60 S.Ct. at 246, and specified that the proper party to bring actions against fiduciaries was the trustee:
 
 
 72
 While normally that fiduciary obligation is enforceable directly by the corporation, or through a stockholder's derivative action, it is, in the event of bankruptcy of the corporation, enforceable by the trustee. For that standard of fiduciary obligation is designed for the protection of the entire community of interests in the corporation--creditors as well as stockholders.
 
 
 73
 Id. at 307, 60 S.Ct. at 245.
 
 
 74
 This clear statement by the Supreme Court that alter ego principles may be appropriate criteria for equitably subordinating or disallowing claims of fiduciaries, and that the trustee has standing to bring actions against fiduciaries, is universally upheld. Equitable subordination exemplifies the underlying premise of bankruptcy policy, which is an equitable balancing of the interests of all affected parties in a bankruptcy case. That balancing considers the degree of hardship faced by each party, as well as any qualitative differences in the hardships each may face, NLRB v. Bildisco & Bildisco, 465 U.S. 513, 527, 104 S.Ct. 1188, 1196, 79 L.Ed.2d 482 (1984); but it also considers the level of duty owed by each party to the debtor and the good faith basis of their interactions. Pepper v. Litton, 308 U.S. at 306-07, 60 S.Ct. at 245. The alter ego doctrine reflects that same tradition of equity, the same purposes of protecting innocent parties and of securing just, balanced results as does the equitable subordination doctrine. Both theories intend to produce results of inherent fairness to all interested parties at different stages of the bankruptcy proceeding. The equitable subordination doctrine applies when it is necessary to consider a fiduciary's relationship and obligations to the debtor at the time of distribution. Assuming that state law does not otherwise bar its use, the alter ego theory applies just as properly earlier in the bankruptcy proceeding to reach assets of fiduciaries that equitably belong in the debtor's estate.
 
 E.
 
 75
 The trustee is the proper party to enforce fiduciary obligations "for the protection of the entire community of interests in the corporation--creditors as well as stockholders." Pepper v. Litton, 308 U.S. at 307, 60 S.Ct. at 245. However, appellants herein insist that there are two reasons that the trustee cannot represent their interests when he brings an alter ego action against the Member-Owners.
 
 
 76
 First, they assert that they are not creditors, but rather preference defendants. Thus, the trustee cannot represent them in his creditor capacity pursuant to section 544.[14] However, it is clear from the final allegation of the oil companies' complaint that the appellants intend to claim joint and several liability of the Member-Owners only if the trustee should recover preferential transfers from them, "because, at the time of any recovery by the Trustee, Plaintiffs will become creditors of ECI for that amount."
 
 
 77
 As preference defendants, appellants are now "potential" or "contingent" creditors. If they become creditors, the trustee's pursuance of the alter ego claim will benefit them, for they will participate in the distribution of assets available to all creditors. On the other hand, if they do not become creditors (that is, if the trustee does not succeed in proving the preferential transfers to them), they will have no interest in the relationship between ECI and the Member-Owners, for they presumably will have no need to be a party in the bankruptcy.
 
 
 78
 Secondly, the oil companies contend that the ECI trustee is not an effective representative of their interests. They claim that he has filed two irreconcilable suits: one against them to recover alleged preferential transfers, and another against the Member-Owners on the alter ego theory. In the first adversarial action he is attacking the appellants; in the second he claims to be asserting their interests as well as the interests of all creditors of ECI. Appellees respond that it is in the nature of a trustee's duties to be a representative of the entire bankruptcy estate as well as of creditors, and that no conflict of interest has arisen.
 
 
 79
 Appellants' claim misinterprets the paramount duty of a trustee, which is the amassing of estate assets for a pro rata distribution to all creditors. There is no conflict of interest in his collecting all property available under state law as representative both of the debtor and of the creditors, for any property brought into the estate will benefit creditors. The trustee has the additional role of investigating the debtor in his activities and of scrutinizing all parties in close relationship with the debtor for abuses that will harm the creditors. In that capacity, as well as in his capacity as representative of the general creditors, he can pierce the veil of the debtor corporation harmed by the misconduct of fiduciaries in order to reach the assets of those fiduciaries. And because the corporation itself was injured, it is not in pari delicto with the wrongdoers. "The corporation is not at fault for being the alter ego of the defendants, just as it is not liable for the defendants' breach of fiduciary duty to it." In re Western World Funding, Inc., 52 B.R. at 781. For this reason there is no conflict in the trustee maintaining an alter ego action.
 
 
 80
 The responsibility of a trustee is a heavy one. His fiduciary obligations are parallel to those of fiduciaries of nonbankruptcy trusts: He must be loyal to the interests of all beneficiaries and must defend those interests scrupulously. At the same time, the very circumstances of a bankruptcy establish conflicting interests: insufficient assets for the potential beneficiaries; different classifications and treatment of claimants under bankruptcy law; attempts by claimants to collect as much of the debtor's estate for themselves as possible, to the detriment of other possible beneficiaries. Often a trustee must sue claimants because of situations like those of this case. "A good percentage of the litigation in which the trustee engages is against those who are creditors of the estate or who will become so if litigation to recover transfers is successful." 1 Cowans, Sec. 2.7 at 76. In order to properly perform his duties under the Bankruptcy Code, therefore, the trustee must protect "the interests of creditors collectively and in so doing may litigate against creditor interests individually." Id.
 
 
 81
 Despite the conflicts of the competing interests of self-serving parties in interest in a bankruptcy case, the trustee himself is not in conflict. His attention is directed to the diligent recovery of the debtor's assets for the benefit of all claimants, and he strives for equality of distribution. Sampsell v. Imperial Paper Corp., 313 U.S. at 219, 61 S.Ct. at 907.
 
 
 82
 Correspondingly, those parties attempting to challenge the adequacy of a trustee's representation of their interests have a heavy burden. Plaintiffs failed to demonstrate the trustee's inadequacy in Heyman v. Exchange Nat. Bank of Chicago, 615 F.2d 1190 (7th Cir.1980) and Meyer Goldberg, Inc. of Lorain v. Goldberg, 717 F.2d 290 (6th Cir.1983). Appellants herein have similarly been unsuccessful.
 
 IV.
 
 83
 We have addressed the oil companies' allegations that the trustee lacks standing to maintain an alter ego cause of action and is unable to represent appellants adequately in the bankruptcy alter ego litigation against the Member-Owners, and have found appellants' arguments to be without merit. We now return to their assertion that they themselves satisfy the constitutional requirements for standing and find that this contention, as well, is unpersuasive.
 
 
 84
 A party bringing a declaratory action must show an actual controversy and a direct injury or threat of injury that is "real and immediate, not conjectural or hypothetical." Foster v. Center Township of LaPorte County, 798 F.2d 237, 242 (7th Cir.1986). The facts alleged in the pleadings must show "that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969) (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)).
 
 
 85
 We first find that appellants' threat of injury is not sufficiently immediate. The oil companies do allege real injury in the form of the preferential transfer suit against them by the ECI bankruptcy trustee. However, the fact that these appellants have been sued in the bankruptcy proceeding for preferential transfers or that they might someday become actual creditors of ECI "is palpably inadequate to confer standing" on them to challenge the Member-Owners' relationship to the debtor.[15] Foster, 798 F.2d at 242. That future harm is, at this point, still conjectural rather than actual and "insufficient to constitute an injury-in-fact, threatened or actual, within the meaning of Article III." Id. See Larsen v. Valente, 456 U.S. 228, 238-39, 102 S.Ct. 1673, 1680, 72 L.Ed.2d 33 reh'g denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1323 (1982); Havens Realty Corp. v. Coleman, 455 U.S. 363, 372-74, 102 S.Ct. 1114, 1120-21, 71 L.Ed.2d 214 (1982); Valley Forge, 454 U.S. at 471-72, 102 S.Ct. at 757-58.
 
 
 86
 Furthermore, appellants have not shown that they have sustained "a direct injury as a result of the defendants' conduct." Foster, 798 F.2d at 242. The harm contemplated by the oil companies might come from the ECI trustee but not from these defendants. Appellants have not shown a direct injury to themselves as a result of challenged conduct of the Member-Owners. A party claiming standing must indicate in its complaint that the injury which it suffers "is indeed fairly traceable to the defendant's acts or omissions." Village of Arlington Heights v. Metropolitan Housing Development Corporation, 429 U.S. 252, 261, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977). The complaint of the oil companies alleges no injury to them by the named defendants. They have sought a declaration that the Member-Owners harmed ECI, and that the Member-Owners' manipulation of ECI had a detrimental effect on them; this secondary or resultant effect is not a sufficient showing that they themselves were injured by the Member-Owners.
 
 
 87
 The complaint must show a "substantial controversy between parties having adverse legal interests." Golden v. Zwickler, 394 U.S. at 108, 89 S.Ct. at 959. Because no injury is traced to these defendants in the pleadings, appellants have not met their burden of establishing a concrete and reviewable controversy between themselves and the Member-Owners.
 
 
 88
 Appellants have stated that they wanted to use the declaratory judgment of the alter ego relationship between ECI and its Member-Owners as a defense in the preference suits. However, Article III requires a genuine resolution of actual controversies so that "a court may decide the case with some confidence that its decision will not pave the way for lawsuits which have some, but not all, of the facts of the case actually decided by the court." Bender v. Williamsport Area School District, 475 U.S. 534, 106 S.Ct. 1326, 1332, 89 L.Ed.2d 501 (1986). The oil companies' intended use of the district court's decision to "pave the way" for another lawsuit by deciding "some, but not all, of the facts of the case" is forbidden under Article III. Id.
 
 
 89
 In essence, appellants are attempting to put the district court in the role of advising the bankruptcy court of the outcome of its preferential transfer litigation: Should the oil companies be required to turn over those transfers, the district court has already determined that the Member-Owners must pay those amounts on behalf of the appellants. This would be the very type of advisory opinion which Article III intends to exclude. Flast v. Cohen, 392 U.S. 83, 96, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968); United Public Workers of America v. Mitchell, 330 U.S. 75, 89, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947).
 
 
 90
 In order for a case to be justiciable, the dispute must touch upon "the legal relations of the parties having adverse legal interests." Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 240-41, 57 S.Ct. 461, 463-64, 81 L.Ed. 617 (1937). Appellants have not shown that the parties in this case have adverse legal interests. We therefore conclude that the district court properly granted the Member-Owners' motion to dismiss on the ground that the oil companies' complaint failed to establish their standing to bring their declaratory judgment alleging an alter ego relationship.
 
 
 91
 SO ORDERED.
 
 
 92
 CUDAHY, Circuit Judge, concurring in part and dissenting in part:
 
 
 93
 The statutory branch of the majority opinion confronts, it seems to me, very serious problems of legal theory but resolves them on an essentially pragmatic basis. The essential theoretical question is whether ECI could ever have maintained an action against its member-owners on the ground that ECI was the alter ego of the owners. Apparently, ECI could not have carried on such an action:
 
 
 94
 The doctrine of alter ego does not create assets for or in the corporation. It simply fastens liability upon the individual who uses the corporation merely as an instrumentality in the conduct of his own personal business. The liability springs from fraud. The fraud from which it arises is not perpetrated upon the corporation, but upon third persons dealing with the corporation.
 
 
 95
 Garvin v. Matthews, 193 Wash. 152, 156-57, 74 P.2d 990, 992 (1938) (citations omitted). Without dealing directly with this problem of theory, the majority has concluded that the trustee, in marshalling ECI's assets, may maintain an alter ego action against the member-owners.
 
 
 96
 Despite the rather basic conceptual problems, policy considerations favoring vesting the action in the trustee encourage a sufficiently broad construction of section 541 to empower the trustee to bring an alter ego action. There seems to be enough authority to support this construction, and I therefore join the majority on this point.
 
 
 97
 I do not, however, agree that the oil companies fail to meet the constitutional requirements for standing. It seems to me that the filing of suit by the trustee to set aside preferential transfers to the oil companies creates an injury that is sufficiently "distinct and palpable" and "fairly traceable" to the named defendants. Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1954). The oil companies have brought this suit as a defense to the trustee's preference actions. A trustee may recover preferential transfers only if the debtor was actually insolvent when it filed for bankruptcy. In this alter ego suit, the oil companies sought an order declaring, among other things, that ECI was solvent, which would thereby preclude the trustee's preference actions. In addition, if the trustee's suits are successful, the oil companies will become creditors with a clear interest in maximizing the assets available to them in a distribution. In effect, the allowed misuse of the corporate form by the owner-members has defrauded ECI's creditors.
 
 
 98
 I therefore concur in the result reached by the majority on statutory grounds, but would not find this lawsuit to be barred by the Constitution.
 
 
 
 *
 The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation
 
 
 [1]
 In prior litigation in the district court, the debtor and intervening plaintiffs representing unsecured creditors in the ECI bankruptcy sought, by joint motion, a determination of the proper party to bring an alter ego action against the Member-Owners. In re Energy Co-op, Inc., 58 B.R. 132 (N.D.Ill.1984). The court determined that the trustee had standing to represent all creditors for the purpose of asserting state law causes of action against directors and stockholders. Id. at 134, 135. The trustee was also found to be the proper party to bring suit against the Member-Owners "to insure adherence to the pervasive Bankruptcy Code policy of equality of distribution among creditors." Id. at 136
 
 
 [2]
 This case is essentially a dispute between the ECI bankruptcy trustee, whose rights are being asserted by the Member-Owners, and the oil companies to gain title to the Member-Owners' assets. The difference in the result of this dispute is noteworthy. If the oil companies prevail both in their suit to remove this standing limitation and in their declaratory action, then under the terms of the complaint they will "recover from the Member-Owners all amounts that the trustee may recover from [them]." That is, if the trustee recovers the $50 million in preferential transfers, the oil companies are protected in full. On the other hand, if the trustee is found to have standing and he succeeds in his alter ego action, the Member-Owners will be liable for ECI's debts in the bankruptcy. Their assets will become assets of ECI's estate for pro rata distribution to all creditors. If the oil companies are, at that point, creditors of ECI, they will probably receive only a portion of the amounts they turned over to the estate as preferential transfers
 
 
 [3]
 The authority granted to a debtor-in-possession supervising a Chapter 11 case is virtually identical to that granted to a trustee; what differences there are do not affect this case. See 11 U.S.C. Sec. 1107. Thus, our discussion of a trustee's powers is applicable to the role of a debtor-in-possession
 
 
 [4]
 See also Pension Benefit Guaranty Corp. v. Ouimet Corp., 711 F.2d 1085, 1093 (1st Cir.1983), cert. denied, 464 U.S. 961, 104 S.Ct. 393, 78 L.Ed.2d 337 (1983), which applied the alter ego doctrine to hold solvent members of a corporate group responsible for the liability of the insolvent corporate member. Liability was found under the ERISA statute and under the bankruptcy court's equitable powers to consolidate assets and liabilities of various interrelated business entities to protect creditors and to achieve reorganization
 
 
 [5]
 Compare Posner, The Rights of Creditors of Affiliated Corporations, 43 U.Chic.L.R. 499, 520-21 (1976). There is a lively debate in the University of Chicago Law Review between Judge Posner and Professor Jonathan M. Landers in this area. See Landers' two articles, A Unified Approach to Parent, Subsidiary & Affiliate Questions in Bankruptcy, 42 U.Chic.L.R. 589 (1975) and Another Word on Parents, Subsidiaries & Affiliates in Bankruptcy, 43 U.Chic.L.R. 527 (1976). See also Easterbrook and Fischel, Limited Liability and the Corporation, 52 U.Chic.L.R. 89 (1985)
 
 
 [6]
 Although In re Palmer Trading, Inc. found that the bankruptcy court did not present legally sufficient findings of alter ego, it did not challenge the trustee's right to assert the alter ego claim. Palmer Trading was criticized for its reliance on a Seventh Circuit alter ego test, rather than on a state law definition of the doctrine, in Van Dorn Co. v. Future Chemical and Oil Corp., 753 F.2d 565, 570-71 (7th Cir.1985) and was limited to its facts in Matter of Kaiser, 791 F.2d 73, 76 (7th Cir.1986)
 
 
 [7]
 It is not within the scope of this appeal to determine in which capacity the ECI trustee may assert an alter ego cause of action. An alter ego claim depends upon the circumstances of the case; therefore, the posture of the trustee may be determined by the facts. We have held only that a bankruptcy trustee is not precluded from maintaining an alter ego action under Indiana and Illinois law
 
 
 [8]
 Appellants have assured the court that they seek only declaratory relief, not the recovery of estate assets or money damages, and thus will not interfere in the ECI bankruptcy proceeding. However, they have also stated that the granting of this declaratory action would result in collaterally estopping the Member-Owners from denying their liability to the bankruptcy estate, and in the oil companies' recoupment of any funds brought into the estate as preferential transfers. Certainly such results would impinge significantly on the underlying bankruptcy
 
 
 [9]
 If the trustee chooses not to prosecute an action on behalf of the estate, the cause of action revests in the debtor, who can then assert title. Stein v. United Artists Corp., 691 F.2d 885, 890-91 (9th Cir.1982); Management Investors v. United Mine Workers of America, 610 F.2d 384, 392 (6th Cir.1979). Only after the trustee and the debtor decline to bring the action may it be maintained by an individual creditor. Ford Motor Credit Co. v. Minges, 473 F.2d 918, 921 (4th Cir.1973). If a stockholder or creditor wishes to institute a suit that the trustee has failed to bring, he must first ask the trustee to abandon the suit and then present the question to the court, asking leave to prosecute the action for and in the name of the trustee. Management Investors, 610 F.2d at 393. See also 3A Fletcher Cyc Corp Sec. 1277.1 (1986). Any party may petition the bankruptcy court to compel the trustee either to bring suit or to abandon the claim. Dallas Cabana, Inc. v. Hyatt Corp., 441 F.2d 865, 868 (5th Cir.1971). Furthermore, the bankruptcy court may decide that a claim should be abandoned and may order the trustee to abandon it. In re Ira Haupt & Co., 398 F.2d 607, 612 (2d Cir.1986)
 
 
 [10]
 Compare In re American Hawk Enterprises, Ltd., 52 B.R. 395 (E.D.Va.1985), which barred a creditor's attempt to pierce the veil of the debtor corporation because the creditor's claims were nearly identical to the trustee's assertions and were not abandoned by the trustee, but rather were settled and released. Id. at 399
 
 
 [11]
 In its revamping of the Bankruptcy Act to create the 1978 Bankruptcy Code, the House of Representatives Committee of the Judiciary included a subparagraph to section 544 that would allow the trustee to enforce a claim that any individual creditor or class of creditors has against a third party. H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 370-71 (1977). It was added in direct response to the Supreme Court's urging in Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972) that Congress make a policy decision concerning the standing of trustees in bankruptcy reorganizations to bring suits against indenture trustees on behalf of debenture holders. Id. at 434-35. (In Caplin, the Supreme Court found that a Chapter X trustee was precluded from enforcing such a claim on behalf of debenture holders. Id. at 434.) However, the Senate's version of the bankruptcy bill deleted that subsection without explanation, and the final version did not contain it. The Tennessee Court of Appeals adopted Vencap's interpretation that this omission was a decision to deny a trustee standing to bring an action on behalf of creditors. Actually, though, the deletion of that subparagraph means only that Caplin is not overruled and that there is no express statutory provision allowing a trustee to bring an action which certain creditors, like debenture holders, have. The omission does not affect a trustee's right to bring a general action on behalf of all creditors rather than a personal one on behalf of only some. See Lumbard v. Maglia, Inc., 621 F.Supp. at 1542. Two recent appellate opinions (released since the writing of the above Koch opinion but prior to its publication) have decided this issue of a trustee's standing in diametrically opposite ways. The Eighth Circuit, relying on Caplin, has held that a bankruptcy trustee has no standing to assert an alter ego claim on behalf of the debtor's creditors. In re Ozark Restaurant Equipment Co., Inc., 816 F.2d 1222 (8th Cir.1987). Although the trustee in Caplin was found not to have standing to sue a third party on behalf of debenture holders, whose claims were specific and personal to them and amounted to only $4.3 million of the $60 million in total liabilities of the debtor corporation, the Eighth Circuit broadly construed that holding to justify its decision that a trustee cannot bring an alter ego action on behalf of creditors. 816 F.2d at 1230. Basing its analysis of the debtor's property on Arkansas law, and arising from an appeal by the debtor's principals of a bankruptcy court's judgment in favor of the trustee, Ozark Restaurant is both factually and legally distinguishable from the case herein. The Fifth Circuit, in contrast, held in In re S.I. Acquisitions, Inc., 817 F.2d 1142 (5th Cir.1987), that a creditor's alter ego action is a right of action belonging to the debtor and, as such, is section 541 property of the estate. 817 F.2d at 1153. The court first found that the alter ego remedy under Texas law was available to all creditors, including the corporation itself, which "may pierce its own corporate veil and hold accountable those who have misused the corporation in order to meet its corporate obligations." 817 F.2d at 1152. Further determining that the creditor's action was not personal to it, but rather a general claim that would benefit all of the debtor's creditors, 817 F.2d at 1153, the Fifth Circuit concluded that the automatic stay of section 362(a)(3) applied to the creditor's alter ego action because it was a claim of the debtor corporation. 817 F.2d at 1154
 
 
 [12]
 Had the trustee been able to maintain an alter ego action on behalf of creditors, benefit would have accrued to all creditors. At that stage, a determination of the position of each individual creditor in his right to recover in the pro rata distribution could be made on an equitable basis, and those undeserving of recovery could be equitably subordinated pursuant to 11 U.S.C. Sec. 510(c)
 
 
 [13]
 The Fifth Circuit's test for subordinating claims in Matter of Mobile Steel Co., 563 F.2d 692 (5th Cir.1977) has been adopted by many courts as the standard formulation of criteria for applying the doctrine of equitable subordination. See In re N & D Properties, Inc., 799 F.2d 726 (11th Cir.1986); In re Westgate-California Corp., 642 F.2d 1174 (9th Cir.1981); In re Multiponics, 622 F.2d 709 (5th Cir.1981); In re Pacific Express, 69 B.R. 112 (Bankr. 9th Cir.1986); In re Loop Hospital Partnership, 50 B.R. 565 (Bankr. N.D.Ill.1985)
 
 
 [14]
 In this context, appellants have also asserted a due process argument: If they are not allowed to bring this declaratory action, they will be deprived of their due process right to have their interests fully and fairly represented in the alter ego litigation against the Member-Owners. However, as is shown above, these parties have no quarrel with the Member-Owners or the debtor until they become creditors, and therefore can claim no real interest in the possibility of an alter ego relationship between them at this time. Nevertheless, the oil companies can protect their interests. They have the option of intervening in the ongoing alter ego action in the bankruptcy court pursuant to Rule 24 of the Rules of Civil Procedure, or of filing a motion in the bankruptcy court requiring the trustee to abandon the alter ego claim so that they can assert it, pursuant to Bankruptcy Rule 6007(b). If they do become creditors, they will have all the rights of creditors in the Bankruptcy Code, and the trustee will adequately represent their rights, as was determined by the bankruptcy court in previous litigation. See footnote 1. Appellants offered no adequate showing of deprivation of their rights at this time or in the future
 
 
 [15]
 The issue of ripeness was also raised in this context. Ripeness requires a showing that appellants will sustain an immediate injury from the challenged action or conduct of defendants. Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 81-82, 98 S.Ct. 2620, 2634-35, 57 L.Ed.2d 595 (1978). Appellants have shown that they might sustain an injury from the ECI bankruptcy trustee, but not from the defendants herein. Therefore, the issues as thus presented in this appeal are not ripe for judicial determination