**34**

BRUNSWICK CORPORATION,
Plaintiff-Appellant,

v.

Harry WAXMAN and Evelyn Waxman, Harry Waxman, Benne Katz, Martin C. Barrell, as Executors of the Estate of Sydney W. Waxman, Deceased, said Harry Waxman and Sydney W. Waxman, being sued individually and as co-partners doing business as Turnpike Lanes, Pike Lanes, Inc., and Waxman Construction Corp., and Jack Verschleiser, as guardian ad litem of Defendant Harry Waxman, in said representative capacity only, Defendants-Appellees (two cases).

No. 601, Docket 78–7485.

United States Court of Appeals,
Second Circuit.

Argued April 5, 1979.

Decided May 21, 1979.

Frederick Newman, New York City (Blumberg, Singer, Ross, Gottesman & Gordon, Alfred K. Kestenbaum, Betsy F. Woolf, New York City, of counsel), for plaintiff-appellant.

Daniel Eisenberg, New York City (Moses & Singer, Eugene I. Farber, Theodore S. Green, New York City, of counsel), for defendants-appellees.

Before MULLIGAN, TIMBERS and VAN GRAAFEILAND, Circuit Judges.

MULLIGAN, Circuit Judge:

Brunswick Corporation (Brunswick) appeals from an order and judgment of the Hon. John R. Bartels, United States District Court for the Eastern District of New York, dismissing the complaint and entering judgment for the defendants after a trial without a jury. Brunswick brought this diversity action against the individual defendants seeking over a million dollars in damages. This amount represents the deficiency due under conditional sales contracts entered into between Brunswick and the Waxman Construction Corporation (Construction

Corp.) whereby the latter entity purchased bowling lanes and pinsetters. The individual defendants, Harry Waxman and the late Sydney Waxman, signed the contracts as president and secretary of the Construction Corp. The theory of the plaintiff is that the corporate veil of the Construction Corp. should be pierced and the Waxmans held personally liable for the deficiency.

The fact findings of the trial court indicate that in August 1960, the Waxmans formed the Construction Corp. as a no-asset New York corporation to act as signatory and obligor on a series of conditional sales agreements for the purchase of bowling equipment to be operated in five new bowling alleys. The five alleys and the Brunswick equipment were operated by the Waxmans through five separate partnerships, which owned the non-Brunswick equipment and fixtures in the alleys. The Waxmans owned or leased the real property on which the bowling alleys were located, but charged the Construction Corp. no rent for the use of the premises. Nor did the Waxmans pay rent to the Construction Corp. for the use of the bowling equipment. In addition, the Waxmans owned in their individual or partnership capacities all the licenses and permits necessary to operate the alleys. Proceeds from the daily operation of the businesses were deposited in individual bowling alley accounts and later transferred into a central Waxman enterprises bank account from which funds were withdrawn to meet the necessary operating expenses of the alleys. It was from this central bank account that amounts due on the sales contracts with Brunswick were withdrawn and deposited in the Construction Corp. account. The court below found that the Construction Corp.'s sole corporate activity was the transfer of funds into and out of its bank account for the purpose of meeting the installment payments under the Brunswick contracts. The Construction Corp. held no stockholders' or directors' meetings, adopted no bylaws, and issued no stock. While it filed federal and New York State income tax returns, none of these returns showed any income, nor did any report the Brunswick equipment as corporate assets.

Due to a general decline in the bowling industry, the Construction Corp. was unable to meet its payment obligations under the sales contracts. Pursuant to a 1963 extension agreement, title to the Brunswick equipment was transferred from Construction Corp. to five new corporations, which were also to receive an additional $375,000 in non-Brunswick assets. However, the Waxmans never transferred the additional assets to the five corporations. In addition, these newly formed corporations were as inactive as the Construction Corp. had been. By late 1965, two of the five corporations, Bruckner Lanes, Inc. and Pike Lanes, Inc., were in default. In 1966, Brunswick repossessed its equipment held by Bruckner Lanes and sold it at a substantial deficiency. Although an extension agreement was reached with Pike Lanes in 1966, that corporation continued in substantial default and its equipment was also repossessed and sold by Brunswick at a substantial deficiency.

Although we are persuaded that the district judge reached the proper result here in dismissing the complaint, we cannot subscribe entirely to his views on the law of New York in the field of "piercing the corporate veil" and the disregard of the corporate fiction. New York law in this area is hardly as clear as a mountain lake in springtime. Since Professor Wormser's initial discussion of the topic in Piercing the Veil of Corporate Entity, 12 Colum.L.Rev. 496 (1912), there have been scores of articles and hundreds of cases discussing the problem, advancing and espousing various theories. See Cary, Corporations 109–49 (4th ed. 1969) [hereinafter cited as "Cary"]. In particular we are dubious that, as suggested by the district court, the plaintiff need establish that the Waxmans committed a fraud on Brunswick and that there be a causal connection between the fact that the Waxmans conducted business individually and the contract losses suffered by Brunswick. See, e. g., *Port Chester Electrical Construction Corp. v. Atlas,* 40 N.Y.2d 652, 656–57, 389 N.Y.S.2d 327, 330–31, 357 N.E.2d 983, 986–87 (1976); *Walkovszky v.*

*Carlton,* 18 N.Y.2d 414, 421, 276 N.Y.S.2d 585, 590–91, 223 N.E.2d 6, 10 (1966). We are rather inclined to agree with Professor Cary that "[n]o concept of separate corporate personality will suffice to solve an actual problem." Cary, *supra,* at 110. "What the formula comes down to, once shorn of verbiage about control, instrumentality, agency and corporate entity, is that liability is imposed to reach an equitable result." Latty, Subsidiaries and Affiliated Corporations 191 (1936).

Eschewing conceptualism in this diversity case, where isolated rules in a variety of cases require a factual analysis of each, we believe that Judge Bartels' findings of fact which are supported by the transcript dictate the result reached.

The district judge who tried the case found that Brunswick had knowingly entered into the conditional sales contracts involved in this litigation with a no-asset corporation which was created for the sole purpose of taking title to the equipment which Brunswick sold. Brunswick knew or should be charged with the knowledge that the Waxmans wished to avoid personal liability and that the sole obligor on the sales contract was to be the corporate dummy created for that purpose. Further Brunswick investigated to determine whether the alleys themselves were likely to generate revenues sufficient to make the payments for the equipment purchased by the Construction Corp. Thus, Brunswick was aware or should have known that the dummy corporation was created for the limited purpose of purchase, that the property and buildings in which the equipment was to be installed were owned by the Waxmans in their individual capacities, and that the Waxmans would personally conduct the bowling alley business.

Under these circumstances Brunswick obtained precisely what it bargained for, and it did not bargain for or contemplate the individual liability of the Waxmans which it now seeks to enforce. To pierce the corporate veil here would not in our view accomplish justice or equity but would in fact thwart that end. We therefore refuse to disregard the corporate entity in this case. The creation of the dummy corporation under these circumstances to eliminate personal responsibility should be respected.

Affirmed.