Joseph H. LANE et al.

v.

The UNITED STATES.

No. 132–79C.

United States Court of Claims.

Oct. 22, 1980.

Rehearing and Rehearing En Banc Denied Jan. 28, 1981.

William E. Persina, Washington, D. C., attorney of record for plaintiffs; Robert M. Tobias, Washington, D. C., of counsel.

Eugene R. Sullivan, Washington, D. C., with whom was Asst. Atty. Gen. Alice Daniel, Washington, D. C., for defendant.

Before COWEN, Senior Judge, and NICHOLS and SMITH, Judges.

ON PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON THE PETITION, DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE COUNTERCLAIM AND PLAINTIFFS' CROSS–MOTION FOR SUMMARY JUDGMENT ON THE PETITION AND COUNTERCLAIM

NICHOLS, Judge:

This case comes to us on cross–motions for summary judgment on plaintiffs' petition and defendant's counterclaim. We grant defendant's motion on the petition and plaintiffs' motion on defendant's counterclaim.

Plaintiffs are four former employees of the Internal Revenue Service (IRS) Audit Division. At various times during the period 1967 to 1975, plaintiffs were assigned to audit the Gulf Oil Corporation. Although the specifics remain in dispute, it is uncontested that each of the plaintiffs received various benefits from the taxpayer. These benefits included meals, drinks, and greens fees at golf clubs.

After an investigation, charges were brought against plaintiffs in April 1977, at which time their removals from employment were proposed. The grounds for the proposed removals were threefold. First, plaintiffs accepted meals and entertainment in violation of Section 227.1 of the Rules of Conduct for IRS employees. Second, plaintiffs had falsified time–keeping records in violation of Rule 225.5. Lastly, plaintiffs had utilized government time for personal activities in violation of Rule 226.3.

In June and July of 1977, plaintiffs, through counsel, contested their discharges before the District Director. Upon review of the evidence the District Director concluded that the sustained charges warranted removal of plaintiffs.

Counsel for plaintiffs appealed the decision of the District Director to the Federal Employee Appeals Authority. Hearings were held in March, April, and May of 1978. The FEAA sustained plaintiffs' removals citing specific instances found to be in violation of IRS rules.

The Rule of Conduct under which most of the charges were brought provides, in pertinent part:

227.1 Gifts and Gratuities from Outside Sources

(1) Service Rule

An employee shall not directly or indirectly request or accept any gift, favor, service, loan or entertainment for himself or others under circumstances which might reasonably be construed as influencing or improperly relating to past, present, or future performance of his government duties * * *

(2) Guides

(c) It is normally permissible for employees to accept nominal courtesies extended in the spirit of hospitality.

This rule is clear in its application to the present facts. Defendant specified numerous gratuities, and some are disputed, but it is not denied that all plaintiffs received gratuities in some substantial amount. We recently upheld the discharge of a Department of Agriculture meat inspector in the case of *Jones v. United States*, 223 Ct.Cl. ——, 617 F.2d 233 (1980). In that case a personnel rule, 7 C.F.R. § 0.735–12 (1979), prohibited the acceptance of gratuities with an exception for "[t]he exchange of usual social courtesies which are wholly free of any embarrassing or improper implications." We found the acceptance of a single bottle of whiskey to be outside of the exception and we upheld the discharge under the prohibition.

■ In the instant case we could not find the language of Rule 227.1 to be significantly less clear than the prohibition in the *Jones* case. To the extent that there is a "gray area" within Rule 227.1 where the language may not provide adequate notice that a certain benefit received would be in violation, the benefits received by these plaintiffs are not within it.

■ Plaintiffs argue that the various benefits received from the taxpayer must each be viewed separately and that, viewed separately, each is of "nominal value." We reject plaintiffs' contention. A single free meal is one thing. A whole series of free meals, with no reciprocating hospitality, differs not only in degree but in kind. We need not decide whether a $64.00 golf outing and reception, for example, could be termed "nominal." While a gift of a single trip to Europe would be more offensive than the gratuities here present, separately considered, the IRS is not required to ignore the cumulative effect of much lesser benefits. .

As a subsidiary argument, plaintiffs point out that some IRS supervisory personnel in their district received similar benefits from this taxpayer. From this fact they argue that supervisory personnel are empowered to interpret the rules and that their acceptance of gratuities establishes an agency interpretation that such benefits come within the "nominal courtesies" exception.

■ The rules cited by plaintiff in support of their position, Internal Revenue Manual, Chapter 735.1 § 215(2) and Chapter 1980, § 1981.5, say only that supervisory personnel must abide by acceptable standards of conduct and see that lower level employees do the same. When a middle management supervisor fails in this responsibility, it in no way legitimates conduct by either supervisor or subordinate that either could perceive was wholly unacceptable. In fact, a supervisory employee on the audit in this case was convicted of bribery for accepting paid up junkets to play golf in distant places. *United States v. Niederberger*, 580 F.2d 63 (3d Cir. 1978). If the example of a supervisor might be followed

in a "gray area" this is not true if he sets an example of flagrant misconduct.

Plaintiffs also challenge their removals claiming that the charges were not supported by substantial evidence, that the agency failed to apply "progressive discipline," and that similarly situated employees received disparate treatment. We have thoroughly reviewed these contentions and find them to be unpersuasive.

We turn now to the government's counterclaim to recover the value of the gratuities received by plaintiffs. Plaintiffs set up laches as their defense. As outlined at the beginning of this opinion, the events giving rise to the counterclaim transpired from 1967 to 1975. In 1977, after an investigation, removal proceedings were commenced against plaintiffs. It was not until August 20, 1979, that defendant asserted its counterclaim in an amended answer to the complaint. We find that the defendant's counterclaim is barred by laches.

The elements of the bar of laches are: (1) an unjustified delay in bringing an action, and (2) resulting prejudice to the party asserting laches. In the present case, the defendant initiated removal proceedings against plaintiffs in April 1977. Clearly by that time the defendant was in possession of as much evidence to support proceedings to recover the monies now claimed as it now is. It was not until more than two years and three months later that defendant filed its counterclaim.

Although defendant's delay is not among the most egregious procrastinations found in the case law, we have applied the bar of laches against plaintiffs who have been similarly or less tardy than defendant herein. *Smith v. United States*, 209 Ct.Cl. 685 (1976) and cases cited therein.

It appears the idea to counterclaim originated with Department of Justice counsel. Defendant has not attempted to assert any other justification or explanation for the delay. If defendant early had informed plaintiffs of their possible liability on a government claim for money, delay in bringing the claim to court until it could be done as a counterclaim has obvious explanations and could not be faulted. To unveil such a claim now for the first time is entirely different. Whether or not so intended, it has the ugly look of retaliation for exercise of the legal right to seek court review. The late assertion of a mere offset as is done in some tax refund cases, is different. *Cf. Mahoney v. United States*, Ct.Cl. No. 497-77 (Order of April 11, 1980). We think to avoid laches, defendant should assert any money claim beyond offsets it has against an employee, rising out of the employee's misconduct, whenever it asserts a right to terminate the employment because of that misconduct. The instant counterclaim is not an offset because it is not limited to the amounts plaintiffs have sued for: indeed, the less successful the employee is with his claim in chief, the more exposed he very likely is to the counterclaim. It may further be noted that the liability defendant asserts is not statutory but essentially equitable. Hence it should be subject to equitable defenses of which laches is one. An offset claim here would avail defendant nothing because plaintiffs recover nothing.

Finally, we think that plaintiffs have shown the requisite prejudice resulting from defendant's delay. Unlike the plaintiffs' claim, where the mere fact of receipt of gratuities in any substantial amount was the principal factual issue, the counterclaim would require inquiry into the specific monetary values of gratuities. The defendant's quantum figures are derived from a tainted source, the Gulf officials, who according to their own records, paid the gratuities. But they might have diverted some of them to other purposes and counsel says they did. During the period of delay, other records have doubtless been lost and memories faded. Plaintiffs would be handicapped in their efforts to rebut the specific allegations of defendant.

While we know of no prior case where this court has applied the bar of laches to a government counterclaim, there is no reason to apply a more lenient standard to the government's tardy assertions of its rights than we do to plaintiffs.

Accordingly, defendant's motion for summary judgment on the petition is granted and the petition is hereby dismissed. Also, plaintiffs' motion for summary judgment on defendant's counterclaim is granted and defendant's counterclaim is dismissed.