UNITED STATES of America, Plaintiff,

v.

Roy M. COHN; 39 East 68th Street Corporation; Saxe Bacon & Bolan, P.C.; Thomas Bolan; John Lang; Louis Biancone; Michael Rosen; Daniel Driscoll; Jeffrey Schuman; Gerald Terachter a/k/a Jerry Howard; European American Bank & Trust Company; New York State Tax Commission; City of New York Department of Finance; A. John Steinthal, Jr.; M. Bradley Steinthal, Jr.; Federal Deposit Insurance Corporation as Receiver of American Bank & Trust Co.; Fidelity Deposit Co. of Maryland; Kenneth R. Marcus & Wilber Schneider d/b/a McDonohugh, Schneider & Marcus; and Iva Schlesinger, Defendants.

No. 86 Civ. 2700 (CSH).

United States District Court, S.D. New York.

March 23, 1988.

---

Rudolph W. Giuliani, U.S. Atty. for S.D. N.Y., New York City (Nancy Kilson, Asst. U.S. Atty., of counsel), Meister Leventhal & Slade, New York City, Caplin & Drysdale, Chartered, Washington, D.C. (Myron C. Baum, Jeffrey C. Slade, Alan Vinegrad, of counsel), for Saxe, Bacon & Bolan, P.C., 39 East 68th Street Corp., Thomas A. Bolan, John F. Lang, Louis Biancone and Michael Rosen.

Fink, Weinberger, Fredman, Berman & Lowell, P.C., New York City (Robert S. Groban, Jr., of counsel), for Jeffrey Schuman.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

The government brings this action pursuant to 26 U.S.C. § 7401 to recover approximately $7,000,000 in taxes and accrued interest and penalties allegedly owed by Roy M. Cohn.[1] The action is before the Court on motions to dismiss or for summary judgment made by defendants Saxe, Bacon, & Bolan, P.C., Thomas Bolan, John Lang, Louis Biancone and Michael Rosen ("the Saxe, Bacon defendants"), 39 East 68th Street Corporation ("39 East 68 Corp."), Daniel Driscoll, and Gerald TerAchter.[2]

### I.

### Background

Roy M. Cohn, the first named defendant, was for many years a prominent member

1. By order dated June 25, 1983 I referred this action to Hon. Kathleen A. Roberts, U.S. Magistrate, for supervision of all pre-trial matters including report and recommendation on any dispositive motions. The instant motions were filed in June and July, 1986. Oral argument on the motions was heard by Magistrate Roberts on September 14, 1987. The last submission on the motions is dated November 30, 1987. For reasons unrelated to this action, I withdrew my reference to the Magistrate on February 11, 1988.

2. Defendant Jeffrey Schuman also moves to dismiss the action against him, and for sanctions pursuant to F.R.Civ.P. 11. Schuman's motions are treated separately under Point V, *infra*.

of the bar of the State of New York. He was disbarred in June, 1986, approximately two months after this action was filed. On August 2, 1986, Cohn died. Although Cohn apparently served an answer *pro se* on counsel for the government in this action, he never filed the answer with the Court. Therefore, when he died Cohn had neither answered nor moved with respect to the complaint. No motion to substitute his estate has been filed or granted.

The tax liabilities sought to be satisfied by this action are based on stipulated decisions of the United States Tax Court, consented to by Cohn, or on tax returns filed by Cohn. It thus appears that the underlying amount of tax owed by Cohn is not subject to dispute. Defendants do not suggest that the penalty or interest calculations contained in the complaint are deficient in any way.

The liability of the moving defendants for Cohn's taxes and associated interest and penalties is, however, hotly disputed. In broad terms, the government contends that the moving defendants are liable because they aided Cohn in a complicated scheme aimed at avoiding satisfaction of his tax liabilities.

The essence of the scheme alleged by the government is hinted at in a book authored by Cohn titled *How To Stand Up For Your Rights And Win* [3] where he states his belief that:

> ... if you love your country and want to contribute to its improvement, there are more direct ways than to throw your money into IRS coffers.

Cohn then declared the crux of what the government contends was his strategy to avoid throwing his money into IRS coffers:

> I decided to have no assets. I have no immediate family, and my law firm is in excellent financial condition.

Specifically, the government alleges: (1) that defendant 39 East 68 Corp. took title to a townhouse located at 39 East 68th Street, New York, New York ("the townhouse") as Cohn's nominee and alter ego; (2) that Cohn's assets were fraudulently transferred in efforts to defeat the rights of his creditors, including the government; (3) that the moving defendants acted jointly and severally to assist Cohn in concealing his interest in the townhouse so as to impair the effectiveness of tax liens against Cohn's property; and (4) that the Saxe, Bacon defendants impaired the effectiveness of tax liens against Cohn's property by paying expenses to third parties on his behalf rather than paying him a salary or otherwise directly compensating him for his services.

The government seeks to foreclose tax liens against Cohn's property which arose at the time assessments for taxes, penalties and interest due were levied. 26 U.S.C. §§ 6321, 6322. In particular, the government seeks to foreclose its liens on the townhouse [4] and on funds that were earned by Cohn as compensation but were retained by Saxe, Bacon or paid out to third parties on Cohn's behalf.

At the same time that Cohn and the moving defendants were allegedly devising this asset avoidance scheme, Cohn's tax liability was growing. The tax years in question range from 1959 to 1983. The taxes were assessed at various times between 1972 and 1984, with the majority of the assessments falling in 1978 and 1980.

## II.

Counts II and III in the complaint allege that 39 East Corp. is the "nominee" and "alter ego" of Mr. Cohn, and that therefore the corporation's only asset—the town-

3. Simon & Schuster, New York (n.d.). The quotations in the text appear at page 301 of Cohn's book in a chapter entitled "Taxes." The quotations also appear in the government's Memorandum in Opposition to the Saxe, Bacon defendants' motion to dismiss at page 5.

4. The townhouse was sold after extensive litigation in this Court which ultimately resulted in the consent of all parties to particular sale

terms. The net proceeds from the sale are held in an interest bearing account by the Clerk of the Court pending resolution of this action. For convenience I refer to the townhouse as if it had not yet been sold, although the prevailing party (or parties) in this action will recover money generated by the sale rather than possession of the premises.

house—is subject to foreclosure as Cohn's property.[5] The substantive allegations contained in these counts read:

24. During September, 1967, an agreement of sale with respect to [the townhouse] had been executed between the sellers (Ella Milbank Foshy and Thomas Fowler Milbank, who were joint tenants and the executors of the last will and testament of Katherine Fowler Milbank) and the prospective purchaser—the defendant Roy M. Cohn. The agreement was assignable by the prospective purchaser, and on or about October 9 or October 10, 1967, the agreement was assigned by the defendant Roy M. Cohn, without consideration, to the defendant [39 East Corp.].

25. Upon information and belief, the funds used by [39 East Corp.] as a down payment for the [townhouse] were obtained for no consideration from the defendant Roy M. Cohn, or from the Estate of Dora M. Cohn, who was the mother of the defendant Roy M. Cohn. Roy M. Cohn was the sole beneficiary of the Estate of Dora M. Cohn.

26. The defendant Roy M. Cohn has resided in [the townhouse] and exercised dominion and control over the property at least since January, 1968.... The defendant Roy M. Cohn has exercised dominion and control over [39 East Corp.] at least since October, 1967.

27. The defendant [39 East Corp.] holds nominal title to [the townhouse] as a nominee for the defendant Roy M. Cohn, who is and has been the true owner of that real property since at least October 18, 1967.

28. The federal tax liens [described in Count I] attached to ... Roy M. Cohn's interest in [the townhouse] on the dates

on which the various assessments ... were made.

\* \* \* \* \* \*

30. The defendant [39 East Corp.] is the alter ego of ... Roy M. Cohn and has been since at least October 18, 1967. Accordingly, the federal tax liens described [in Count I] attached to ... Roy M. Cohn's interest in [the townhouse] on the dates on which the assessments ... were made.

Defendants argue that undisputed facts demonstrate no indicia of an alter ego/nominee relationship between 39 East 68 Corp. and Cohn. They note that Cohn has never been an officer, director, shareholder or employee of 39 East 68 Corp., and that the government fails to specifically allege that corporate funds were commingled with Cohn's personal funds, that corporate formalities were disregarded, or that the corporation was simply used for the personal purposes of Cohn.[6]

In addition, defendants maintain that 39 East 68 Corp. is a *bona fide* real estate operating company formed to own and manage the townhouse. They contend that the purchase of the townhouse, leases entered into with Cohn and Saxe, Bacon (and its predecessor firms), mortgages and other corporate transactions were "real, bargained-for transactions ... supported by consideration, ... participated in by independent lender banks, and ... consistent with the corporation's separate corporate existence and the nature of its business." Memo in Support at 13. This contention is purportedly supported by the undisputed facts, including facts sworn to by various moving defendants. *See* Aff. of John F. Lang sworn to June 30, 1986; Aff. of Gerald TerAchter sworn to June 30, 1986.[7]

---

**5.** Count I is asserted solely against Cohn.

**6.** The factors defendants contend are both essential to a successful alter ego/nominee claim and missing from this case are drawn from a number of cases including *Walkovsky v. Carlton,* 18 N.Y.2d 414, 276 N.Y.S.2d 585, 223 N.E.2d 6 (1966); *Lamar v. American Basketball Ass'n.,* 468 F.Supp. 1198 (S.D.N.Y.1979); *Valley Finance, Inc. v. United States,* 629 F.2d 162 (D.C. Cir.1980); *G.M. Leasing Corp. v. United States,* 514 F.2d 935, (10th Cir.1975), *rev'd on other*

*grounds,* 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977).

**7.** Defendants also contend that the position asserted by the Government in this action regarding Cohn's alleged ownership of the townhouse contradicts a position taken by the IRS in a proposed agreement with the Saxe, Bacon defendants regarding a separate dispute. Dubitsky Aff. sworn to June 30, 1986, ¶¶ 9, 10. While this contention may indicate that evidence concerning ownership of the townhouse is ambigu-

The government asserts that on this as on other claims full discovery is necessary before it can fully refute the defendants' contentions. *See* Aff. of Nancy Kilson, sworn to October 17, 1986. However, based on the evidence submitted on the motion, the government argues that material factual questions about the relationship between Cohn, the Saxe, Bacon defendants, and 39 East 68 Corp. are apparent.

For example, the government notes that in addition to leasing a room in the townhouse from 39 East 68 Corp., Cohn personally guaranteed Saxe, Bacon's lease obligations. Furthermore, 39 East 68 Corp. executed a series of leases with Saxe, Bacon that do not appear to be motivated solely by arms-length business concerns. The first lease, dated October 16, 1967, was for a term of twenty-five (25) years, and obligates Saxe, Bacon to pay $3,000 per month in rent, all taxes and assessments on the property, and insurance premiums.

In 1972, twenty years before the expiration of the first lease, Saxe, Bacon and 39 East 68 Corp. executed a second lease. This lease was for a term of eight (8) years, with options to renew for a total of ten years, and obligated Saxe, Bacon to pay a monthly rent of $6,000, and to pay water and sewer costs.

In 1975, yet another lease was executed. This lease was for a term of five years with an option to renew for an additional five years, and obligated Saxe, Bacon to pay the same $6,000 monthly rent and to pay "utilities and maintenance." Finally, in 1978, the lease apparently existing at the instigation of this lawsuit was executed.[8] The 1978 lease, which was purportedly executed because both parties wished a longer term relationship, provided for a term of twenty (20) years, with an option to renew for another twenty (20) years. Again, the monthly rent was $6,000, and the Saxe, Bacon firm was obligated to pay utilities, taxes and maintenance.[9]

Each of the leases purport to give Saxe, Bacon the right to use and occupy the entire townhouse, yet 39 East 68 Corp. also executed at least one lease with Cohn granting him the use and occupancy of a rear bedroom on the second floor of the townhouse. Apparently, no written agreement between Cohn and Saxe, Bacon regarding shared use of that room exists. Furthermore, the Saxe, Bacon defendants concede that it has at unspecified times paid unspecified "operating expenses" on behalf of 39 East 68 Corp. instead of making rental payments as required under the various leases. Lang Aff. ¶ 8.

The information presented on this motion and thus available to the government[10] at least arguably supports the claim that the written agreements were both unorthodox and not strictly observed. The government contends that as yet undisclosed agreement(s) truly governed the transactions between the defendants, and it speculates

---

ous at best, it does not establish the defendants' entitlement to summary judgment.

**8.** The 1978 lease referred to in text was submitted to the Court as exhibit 9 to the Aff. of Robert L. Charboneau, an I.R.S. agent. It refers to a lease dated April 1, 1978. *See* ¶ 1. No such lease has been submitted to the Court or otherwise referred to in the papers submitted on the present motions. Perhaps this reference is a typographical error, with the actual lease intended to be referenced being the April 1, 1975 lease described in the text. Presumably this question will be resolved after discovery.

**9.** The lease included the following provision: 9. However, if Lessor fails to seek a legal remedy for the non payment of said rent for more than Ninety (90) days, Lessor is deemed to have waived his right to recover said rental payments.

This restriction on the rights of the Lessor, 39 East 68 Corp., is not addressed by the parties. Without professing any special knowledge of terms common to New York commercial leases, I suspect that this clause may be relevant on the issue of the arms length character of the lease.

**10.** Much of this information was available to the Government well before instigation of this lawsuit. The Saxe, Bacon defendants claim that the Government's extensive investigation prior to filing the action undercuts its claim under F.R.Civ.P. 56(f) that discovery is required to respond to the instant motions. As the discussion in text makes clear, the amount of information available to the government is sufficient to provide a factual basis for the allegations in counts II and III, *cf.* F.R.Civ.P. 11, but is not sufficient for ultimate proof of those allegations.

that the undisclosed agreement(s) would show that the defendants were working towards the common goal of using Cohn's money to buy and maintain the townhouse on Cohn's behalf while protecting the townhouse from levy by the IRS.[11]

Of course, these unorthodox arrangements and the underlying agreement(s) they may evidence are of no avail to the government if defendants are correct in contending that legal title to the townhouse rests in a corporate entity which cannot be pierced to satisfy Cohn's tax obligations. In resolving this question, I must look to New York law to determine whether Cohn has any interest in the townhouse which can be subject to the government's levy. *Aquilino v. United States*, 363 U.S. 509, 512–513, 80 S.Ct. 1277, 1279–80, 4 L.Ed.2d. 1365 (1960); *United States v. Kocher*, 468 F.2d 503 (2d Cir.1972), *cert. denied* 411. U.S. 931, 93 S.Ct. 1897, 36 L.Ed.2d 39 (1972).

The government argues that no particular indicia of alter ego/nominee status are required of a properly stated claim invoking the Court's equitable power to pierce a corporate veil. It contends that all it need establish is that equity demands the relief sought. *See Brunswick Corp. v. Waxman*, 599 F.2d 34, 36 (2d Cir.1979) ("[n]o concept of separate corporate personality will suffice to solve an actual problem'.... 'What the formula comes down to, once shorn of verbiage about control, instrumentality, agency and corporate entity, is that liability is imposed to reach an equitable result.'") (quoting Cary, *Corporations*, (4th ed. 1969) at 110 and Latty, *Subsidiaries and Affiliated Corporations*, (1936) at 191).

Invocation of the equitable power to pierce corporate formalities to satisfy tax obligations of an individual is not unprecedented. As the Court of Appeals for the District of Columbia noted:

> The concept of distinct corporate entity has long served useful business purposes, encouraging risktaking by individual investors as well as overall convenience of financial administration.... Ordinarily, such considerations justify treating the corporation as a separate entity, independent of its owner.... On occasion, however, this concept is abused, and yields results contrary to the interests of equity or justice. Courts have not hesitated to ignore the fiction of separateness and approve a piercing of the corporate veil when the corporate device frustrates clear intendment of the law.... *The Government's inability otherwise to satisfy legitimate tax debts. clearly may form a sound basis for such disregard of corporate form.*

*Valley Finance, Inc. v. United States*, 629 F.2d 162, 172 (D.C.Cir.1980) (citations omitted, emphasis supplied).

The defendants contend that the complaint fails under New York law to allege sufficient indicia of alter ego/nominee status as a matter of pleading, and that the undisputed facts show that the government could not in good faith plead sufficient indicia. The cases cited by defendants in support of this contention, however, all consider whether a shareholder may be held personally liable for the debts or actions of a corporation, or whether an individual is personally subject to the jurisdiction of the court because he controls a corporation that is subject to personal jurisdiction.

It may be true that New York law requires particularized statements in the pleadings alleging at least some of the indicia listed by defendants when personal liability or personal jurisdiction of a shareholder is sought. *See e.g. Lamar v. American Basketball Ass'n., supra*, 468 F.Supp. at 1204 (commingling corporate and personal funds and disregarding corporate formalities cited as examples of particularized statements required under New York law). However, the instant case does not seek to impose personal liability over 39 East 68 Corp.'s shareholder, nor to subject that shareholder to the jurisdiction of the Court. Instead, this action seeks to establish that

---

11. The complaint suggests that the defendants may have intended to protect Cohn's assets from seizure by all of Cohn's creditors, including the government. To date, however, there appears to be no effort by other creditors to seize assets allegedly belonging to Cohn.

Cohn possessed an ownership interest in the townhouse, and to exercise its levy on the property.

New York law permits a court to disregard the corporate form whenever necessary to prevent a fraud or to achieve equity. *Walkovszky v. Carlton, supra,* 18 N.Y.2d at 417, 276 N.Y.S.2d at 587, 223 N.E.2d at 7. Clearly, if the government can establish that Cohn owns the townhouse and that legal title was placed in 39 East 68 Corp. as part of a scheme to hide Cohn's ownership, equity would demand that the townhouse be treated as Cohn's to respond to his tax debt. This would not involve piercing the corporate veil to hold 39 East 68 Corp.'s shareholder(s) liable for Cohn's debt, but would instead involve the court's equitable power to disregard the formality of legal title to the property in order to achieve a just result.[12] *See United States v. Miller Bros. Const. Co.,* 505 F.2d 1031 (10th Cir.1974) (government permitted to foreclose tax lien against property where legal title rested in a *bona fide* corporation, but facts demonstrated that delinquent taxpayer held beneficial ownership); *Valley Finance, supra.*

In these circumstances, there is no basis to require the government to allege a particular set of facts that New York courts have held necessary or sufficient to pierce corporate veils for liability or jurisdictional purposes. All the government need allege are facts that, under New York law, show that Cohn possessed an ownership interest in the townhouse.

Although the parties have not briefed the point, I conclude that the government has sufficiently alleged such an ownership interest under New York law. In New York as elsewhere, "[e]quity historically has placed substance above form...." *Gerder Services, Inc. v. Johnson,* 109 Misc.2d 216, 439 N.Y.S.2d 794 (Sup.Ct.Erie Cnty.1981). If the government's version of the facts and the motivation behind defendants' actions is correct, equity would require the relief the government seeks on these counts.

Whether the government can prove its allegations is a different matter. Nevertheless, it is clear from the evidence submitted on the present motion that the relations between Cohn, 39 East 68 Corp., and the Saxe, Bacon defendants raise factual questions rendering summary judgment against the government on the question of Cohn's beneficial ownership of the townhouse inappropriate.[13]

### III.

Count IV alleges that: (1) Cohn's transfer of his contractual right to purchase the townhouse; (2) the transfer of downpayment funds from the Estate of Dora Cohn to 39 East 68 Corp.; and (3) all subsequent transfers of funds from Saxe, Bacon to 39 East 68 Corp. for the purpose of making mortgage payments

> ... were accomplished for the purpose of placing [the townhouse] and those funds beyond the reach of the defendant Roy M. Cohn's creditors, including the United States of America. Accordingly, those transfers were fraudulent, as against the United States.

Complaint, ¶ 32.

The Saxe, Bacon defendants and 39 East 68 Corp. move to dismiss this count on the

---

**12.** Defendant Gerald TerAchter, an administrative employee of the Saxe, Bacon law firm, was the sole shareholder of 39 East 68 Corp. from 1967 to 1979. He paid no consideration for the 200 shares of stock he owned. In 1979 TerAchter wished to sell the townhouse, but found no one was interested in purchasing the building because of the existing lease with Saxe, Bacon. He therefore had "no choice" but to sell the building to the law firm. The sale price was agreed to be $300,000, of which he has received approximately $160,000. Although the firm has been slow to make payments on the promissory note evidencing the majority of the sale price,

TerAchter has apparently taken no action to secure his rights thereunder. *See* TerAchter Aff.

**13.** Defendants contend that Counts II and III do not allege separate causes of action, citing a case wherein the court ordered a plaintiff to replead alter ego and nominee theories in a single substantive count. *Wm. Passalacqua Builders v. Resnick Dev. South,* 608 F.Supp. 1261, 1265, n. 2 (S.D.N.Y.1985). While I agree that the claims of alter ego and nominee status appear to be substantively identical on the alleged facts, I cannot see that any useful purpose would be served by requiring the Government to replead these theories in a unitary count.

grounds that the undisputed facts show that none of the transfers complained of were effected with actual intent to defraud Cohn's creditors.

Both parties agree that the government's fraudulent transfer claims are governed by New York law. Section 276 of the New York Debtor & Creditor Law provides:

Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder delay or defraud either present or future creditors, is fraudulent as to both present and future creditors.

(McKinney's 1945).

Defendants stress the undisputed fact that many of the transfers complained of were effected prior to any assessment against Cohn, and they assert that the governments' allegations of fraudulent intent are based on "mere suspicion." Def. Memo in Support at 16. Neither of these arguments demonstrates defendants' entitlement to summary judgment on count IV.

■ The plain language of the statute reaches conveyances intended to defraud future creditors. If the government is able to prove its allegations concerning the asset avoidance scheme devised by Cohn and defendants, every conveyance made in furtherance of that scheme would be considered fraudulent under § 276 as against the government, regardless of whether the conveyance occurred prior to any of the assessments sought to be collected in this action.

■ Defendant's argument that the government will not be able to prove fraudulent intent is similarly unavailing. The analysis of this argument

... begins with a statement of the obvious. Persons whose intention it is to

shield their assets from creditor attack while continuing to derive the equitable benefit of those assets rarely announce their purpose. Instead, if their intention is to be known, it must be gleaned from inferences drawn from a course of conduct.

*In re Checkmate Stereo & Electronics, Ltd.,* 9 B.R. 585, 612 (Bkrtcy E.D.N.Y. 1981). *See also In re Saphire,* 139 F.2d 34, 35 (2d Cir.1943). The allegations in the complaint and additional evidence presented on the present motion demonstrate that the defendants' intent in participating in the subject transactions is a hotly contested factual issue. Summary judgment is normally inappropriate when actual intent is at issue. *Patrick v. Lefevre,* 745 F.2d 153, 159 (2d Cir.1984); *United States v. Paladin,* 539 F.Supp. 100, 104 (W.D.N.Y. 1982) ("Because actual intent to defraud is a necessary element of a cause of action under section 276, summary judgment is appropriate with respect thereto.") This maxim is particularly true when, as here, the party against whom summary judgment is sought has presented evidence and arguments reasonably drawn therefrom which support an inference of fraudulent intent. *Cf. Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2512–14, 91 L.Ed.2d 202 (1986).[14]

■ Defendants also argue that the transfers complained of do not support a claim of fraudulent conveyance because plaintiff must be a creditor of the allegedly fraudulent transferor.[15] In this case, they argue that the only transfer complained of made by Cohn was the transfer of his contractual right to purchase the townhouse from the Estate of Katherine Fowler Milbank. All other transfers, they con-

---

**14.** Many of the cases cited by defendants in support of their motion for summary judgment on count IV involve decisions rendered after a full factual record was developed. *See e.g. United States v. Edwards,* 572 F.Supp. 1527 (D.Conn. 1983); *First National Bank of Batavia v. Frank,* 1 A.D.2d 539, 151 N.Y.S.2d 596, 597–98 (4th Dept. 1956), *aff'd* 3 N.Y.S.2d 849, 166 N.Y.S.2d 84, 144 N.E.2d 727 (1957).

**15.** The sole case defendants cite in support of this proposition comes from the Court of Appeals for the Eleventh Circuit and construes Alabama law. *Cope v. Commissioner,* 781 F.2d 852 (11th Cir.1986). Nonetheless, I assume for the sake of argument that New York law also requires the transferor to be a debtor of plaintiff as an essential element of a claim for fraudulent conveyance.

clude, cannot be considered fraudulent under New York law.

This contention ignores the import of the alleged scheme. If the government is right, each transfer to and from 39 East 68 Corp. was intended to advance the strategy of concealing Cohn's assets from his creditors, and was therefore arguably made at his direction. Payments made by Saxe, Bacon from what the government claims was Cohn's retained compensation could reasonably be said to be transfers made by Cohn himself. In short, whether the fund transfers complained of can be attributed to Cohn is a factual matter of significant dispute, rendering summary judgment for defendants on the point inappropriate.[16]

## IV.

Count V alleges that 39 East 68 Corp., the Saxe, Bacon defendants, Daniel Driscoll, Gerald Terachter and Jeffrey Schuman knowingly concealed Cohn's interest in the townhouse "for the purpose of defeating and with the effect of impairing the effectiveness of the federal tax liens ... with respect to [the townhouse]." Complaint, ¶ 34. The government contends that placing and keeping legal title in 39 East 68 Corp. for that purpose constitutes "tortious conversion and/or impairment of those [federal tax] liens." *Id.*

Count VI alleges that the Saxe, Bacon defendants, acting with knowledge of Cohn's federal tax liabilities, "have endeavored and are continuing to endeavor, jointly and severally, with and on behalf of [Cohn] ... to conceal assets belonging to [Cohn] ..." by using funds otherwise due Cohn as compensation for his services to pay Cohn's personal expenses directly to third parties. Complaint, ¶ 37. "The indirect payment of compensation to [Cohn] ... in the form of compensation for his personal expenses rather than the direct payment to him of compensation was done and continues to be done for the purpose of defeating and with the effect of impairing the effectiveness of the federal tax liens [at issue] ..., and constitutes tortious conversion of those liens." *Id.*

The employment contract between Cohn and Saxe, Bacon contained the following provisions:

2. By virtue of this contract COHN agrees to devote his legal services and expertise to SAXE–BACON with the understanding and agreement that COHN shall have the option to personally retain any and all commissions he might receive from clients for whom he is either an officer or fiduciary.

3. In consideration for the foregoing, with regard to any other fees received by COHN in connection with his work for SAXE–BACON, said sums proffered to and/or received by COHN shall belong to SAXE–BACON and are solely for their account and whether made payable to COHN or SAXE–BACON shall be deemed to be the property of SAXE–BACON from their inception and at all times thereafter, and COHN hereby authorizes SAXE–BACON to endorse his name to any such payments without further permission.

4. In further consideration, SAXE–BACON agrees to pay any and all expenses of COHN, including *but not limited to*, travel and entertainment related to the development and production of business, and to the servicing of the same.

\* \* \* \* \* \*

8. Any personal element incurred in the expenses will be reimbursed by the person who incurred the expense. This reimbursement will become due within ninety (90) days of determination that it is a personal item.

Lang Aff., Exhibit A (emphasis added).

One month after the IRS successfully collected on a levy it served on the Estate

---

**16.** Defendants also argue that the case of *Edwards v. United States*, 572 F.Supp. 1527 (D.Conn.1983) illustrates the fatal weakness of the government's complaint. *Edwards*, however, was decided after a full trial on the merits. The trial judge in that case found, as a matter of fact, that the conveyances at issue were not fraudulent even though unsupported by consideration because they effected an intent to hold family property in a certain manner conceived and executed without any intent to defraud anyone. *See supra*, note 14. The finder of fact may make an analogous finding in this case, but that possibility does not demonstrate defendants' present entitlement to summary judgment.

of Katherine Fowler Milbank to collect Cohn's executor's commission, the employment agreement was amended. The following provision was added:

All fees and commissions payable to ROY M. COHN as a result of his performing any fiduciary function, such as trustee, executor or guardian, shall be the property of SAXE, BACON & BOLAN, P.C., which shall have the right to endorse them and retain the proceeds thereof.

Aff. of Donald W. Brown, sworn to October 16, 1986, ¶ 6.

Defendants argue that the government's "allegations of concealment, knowledge, and purpose are completely at odds with the factual history preceding this litigation." Def. Memo at 26. By "factual history," defendants mean the extensive investigation of Cohn undertaken by the IRS, including his relations with the defendants. From this extensive investigation, defendants argue, the government was fully aware of: (1) 39 East 68 Corp. and its ownership of the townhouse; (2) the contractual arrangements between 39 East 68 Corp. and Saxe, Bacon; and (3) the employment agreement between Cohn and Saxe, Bacon. Thus, defendants conclude that they never concealed anything from the government.

■ This argument misses the import of the government's allegations. The intricate network of facially valid relationships among defendants was allegedly intended to conceal Cohn's beneficial ownership of the townhouse and his control over funds earned as compensation for his services. The government's knowledge of the purportedly valid relationships does not neces-

sarily mean that Cohn's interests were not concealed.[17]

■ In addition, defendants' assertions that the government's allegations concerning knowledge and purpose are not supported by the facts is at once unsurprising and unavailing. It is not surprising that defendants would claim that they had no knowledge of the government's tax liens against Cohn's property, nor is it surprising that they claim their agreements were not motivated by any purpose to escape the effect of those liens. Self serving protestations of ignorance and innocent intentions, however, do not entitle defendants to summary judgment.

Defendants also complain that the government never provided them with notice that it considered its tax liens against Cohn effective against property owned by 39 East 68 Corp. Again, defendants ignore the essence of the government's allegations. The government claims that 39 East 68 Corp. does not own property; it merely holds legal title to the townhouse, which was in reality owned by Cohn.

■ The defendants note that Count V rests on the same factual scenario as the government's alter ego and nominee claims. That is, the government cannot succeed on Count V unless it can convince the trier of fact that 39 East 68 Corp. holds title to the townhouse on Cohn's behalf. This observation does not advance defendants' cause, however, because the government is permitted to plead multiple legal theories justifying the relief sought based on similar factual allegations. F.R.Civ.P. 8(a) ("Relief in the alternative or of several different types may be demanded.")[18]

17. In essence, defendants seem to complain that the government knew of the allegedly suspicious relations among defendants long before this action was commenced. If the government thought Cohn had hidden interest(s) underneath the surface, defendants apparently argue, they could and should have sued when they first learned of the surface arrangements. This contention is discussed more fully in the section on laches, *infra.* I am also unable to conclude, as defendants implicitly urge, that the government's tax lien was not "impaired" by defendants' actions since those actions have long been known to the government. The alleged impair-

ment, I think it fair to say, lies in the complicated and nearly successful efforts to conceal the true ownership of the property in question. That the government finally pieced together the puzzle does not mean that its lien was not impaired.

18. This is not to say, however, that the government is entitled to double relief. If the government establishes that Cohn owned the townhouse, it may either foreclose its lien against it or, if all necessary elements are established, pursue defendants for impairment of the lien. If that point is ever reached in this action,

Finally, defendants assert that any funds paid to third parties pursuant to the terms of the employment contract between Cohn and Saxe, Bacon were legitimate business expenses and not income to Cohn. This assertion is primarily based on paragraph 8 of the agreement quoted above, which calls for reimbursement of personal expenses by the person who incurred them.

 Defendants do not suggest that Cohn ever reimbursed Saxe, Bacon for any personal expenses incurred, nor that the expenses paid by Saxe, Bacon pursuant to the contract were ever reviewed for "determination" of whether they were personal in nature. In these circumstances, the factual issue of whether Cohn's personal expenses were paid by Saxe, Bacon cannot be said to be undisputed. Accordingly, summary judgment for defendants on count VI is inappropriate.[19]

### V.

Defendant Jeffrey Schuman is named only in Count V of the complaint. The government alleges that he, together with the other defendants, endeavored to conceal Cohn's interest in the townhouse by "placing and keeping" legal title to the property in the name of 39 East 68 Corp. Complaint, ¶ 34. Schuman moves to dismiss the action against him and for sanctions pursuant to F.R.Civ.P. 11 on the ground that there is no factual basis for his inclusion in this count.[20]

The parties agree that Schuman held title to property in Greenwich, Connecticut that is the subject of a similar lawsuit in the District of Connecticut.[21] The government contends that "although venue problems required the United States to bring two lawsuits, there is reason to believe that the transactions involving the New York and Greenwich properties were part of a single plan." Letter dated August 8, 1986 from Nancy Kilson to Robert Groban, Exhibit C to Declaration of Robert Groban dated October 2, 1986. The government argues that its pre-filing investigation revealed that Schuman was a major player in Cohn's tax avoidance scheme. He was employed at Saxe, Bacon, he obtained the $17,500 downpayment for the Greenwich property from 39 East 68 Corp., he never put any of his own money into the Greenwich property, he leased it to Saxe, Bacon on terms meant to ensure that all expenses incident to ownership of the property would be paid by Saxe, Bacon, and he "sold" the property to Saxe, Bacon for no consideration except reimbursement of sums owed.

Schuman focuses on the allegation that he endeavored to "place *and* keep" legal title to the townhouse in the name of 39 East 68 Corp. Schuman declares that at the time the townhouse was purchased in 1967, he was a student at Boston University and had never heard of the townhouse or the corporate title holder. Furthermore, although Schuman began working at Saxe, Bacon in 1973 and was associated with the firm off and on from then until 1979, he contends that he "was not an officer, director or shareholder in Saxe, Bacon and took no part in any of its operations." Declaration, ¶ 7.

---

defendants' argument that the lien has not been impaired will have greater force. However, at the pleading stage, there is no basis to disallow the government to pursue both claims.

**19.** In letters exchanged after oral argument on the motion the parties debate the level of "intent," "concealment," and "impairment" necessary to state a claim for tortious conversion and/or impairment of the government's tax lien. I have considered the arguments raised in these letters, and am convinced that none support the relief sought by defendants. The government has alleged that defendants acted purposely to conceal Cohn's interest in the townhouse and Saxe, Bacon's payments to third parties, and that they did so in order to aid

Cohn's scheme of asset avoidance. These allegations, if proved after discovery, state a claim upon which relief may be granted.

**20.** Schuman also joins in the substantive attack on count V mounted by the other defendants discussed *supra*. In addition, Schuman contends the government cannot make out a claim of tortious *conversion* of tax liens, because an action for conversion at common law lay only with respect to personal property, not real estate. The government explicitly disavows any claim for common law conversion, rendering this argument moot. Memo in Opposition at 16.

**21.** *United States v. Roy M. Cohn, et al.,* Civil Action No. B 86-167 (TFGD) (D.Conn.).

■ Clearly, Schuman could have had no part in "placing" the title to the townhouse in 39 East 68 Corp. But to read the complaint as alleging that all defendants participated in every act which comprised the endeavor to maintain title in 39 East 68 Corp. misses the mark. Count V alleges that the defendants endeavored, jointly and severally, to knowingly conceal Cohn's interest in the townhouse. Complaint, ¶ 34. Schuman's lack of involvement in the early phases of the scheme do not insulate him from liability for his alleged participation in maintaining the charade.

Schuman's motion to dismiss the complaint insofar as it alleges that he participated in Cohn's asset avoidance endeavor is brought pursuant to F.R.Civ.P. 12(b)(6).[22] It is well established that

> ... the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof. As formulated in *Conley v. Gibson,* 355 U.S. 41, 45 ... [78 S.Ct. 99, 101–102, 2 L.Ed.2d 80] (1957), a complaint should not be dismissed for insufficiency unless it appears to a certainty that a plaintiff is entitled to no relief under any state of facts which could be proven in support of the claim. *See generally* 2A Moore's Fed.Prac. ¶ 12.08 (2d ed. 1979).

*Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980). In support of the motion, Schuman relies on the government's failure, despite extensive pre-filing investigation, to uncover any concrete connection between Schuman and payments made by or to 39 East 68 Corp. to maintain the townhouse.

The government's failure to uncover proof of its allegations prior to filing this action is irrelevant to the question whether count V states a claim against Schuman. The complaint explicitly alleges Schuman's participation in an endeavor which, if proved, would subject him to liability. Rule 12(b)(6) requires no more.

Schuman's Rule 11 motion relies on his contention that he is innocent of the allegations, and the government cannot prove otherwise. He does not contend that the government failed to adequately investigate the facts prior to filing, but instead that the facts uncovered by the government could not be reasonably interpreted to implicate him in the alleged endeavor.

The extent of Schuman's involvement with the Connecticut property was well established by the government's pre-filing inquiry. Given the similarity of unorthodox arrangements between ownership of the townhouse and the Connecticut property, I cannot say the government's suspicion concerning a unitary scheme was or is unreasonable. The fact that the downpayment for the Connecticut property came from 39 East 68 Corp. may be seen as further evidence that the defendants' endeavor was not divided into two distinct schemes.

■ At this preliminary stage in the proceedings, the government cannot be expected to prove the existence of the endeavor alleged in count V nor Schuman's participation in it. All that need be demonstrated is that a reasonable inquiry was conducted, and that a reasonable attorney could conclude that a claim against Schuman may lie. *See Kamen v. American Telephone & Telegraph,* 791 F.2d 1006 (2d Cir.1986). The government has met that standard here. Accordingly, Schuman's motion for sanctions is denied.

## VI.

There are two statutes of limitation relevant to this action. First, the government must assess the amount of tax due within three years after the return for the year in question is filed. 26 U.S.C. § 6501(a). Second, any action to collect taxes after an assessment must be commenced "within 6 years after the assessment of the tax." 26 U.S.C. § 6502(a)(1).

Defendants initially contended that all but one of the government's claims are barred by the six-year statute of limitations on tax collection actions contained in 26

---

**22.** Schuman's notice of motion also relies on F.R.Civ. 8(a) and 26(c).

U.S.C. § 6502(a)(1).[23] The government asserts that Cohn executed written waivers of the statute of limitations for each of the tax years in question. In support of this assertion, the government has produced written waivers of the statute of limitations for all relevant tax years. Defendants have withdrawn their statute of limitations argument as to collection for those tax years. Transcript of Oral Argument heard September 14, 1987 before Magistrate Roberts ("Tr.") at 17.

In letters exchanged both prior and subsequent to the submission of the motion but prior to oral argument, the defendants assert that the government failed to assess the taxes due for tax years 1959–1969 within the three year period prescribed by 26 U.S.C. § 6501(a). Section 6501(c)(4) of the Internal Revenue Code (Title 26, U.S.C.) requires that valid extensions of the three year limitations period on assessments be executed within the three year period. The government contends that Cohn executed timely and valid extensions of the three year period for each of the tax years in question.

■ At oral argument before Magistrate Roberts, the government informed the Court that it had located timely written extensions of the three year assessment period for every year from 1962 to 1969 except 1964. Tr. at 20. In a letter dated October 1, 1987, the government modified its representation to include 1962 as a tax year for which it did not possess a waiver of the three year assessment period. The government has in its possession written waivers extending the assessment periods for 1962 and 1964, but none that are dated within the requisite initial three year period. From these subsequent waivers, executed either by Mr. Cohn, an attorney, or on his behalf by his tax counsel, the government contends that a trier of fact could infer that Cohn executed an initial timely waiver for 1962 and 1964.[24]

■ It is readily apparent that a genuine issue of material fact exists on the question whether Cohn executed a timely waiver of the initial three year assessment period.[25] Defendants are thus not entitled to summary judgment on claims arising from the 1964 tax year.

For tax years 1959 through 1961 the government does not possess valid waivers. Cohn's tax liability for these years, however, was determined in tax court proceedings. The government contends that any statute of limitations argument concerning these tax years is barred by *res judicata.*

Defendants argue that they cannot be bound by the doctrine of *res judicata* because they were not parties to the tax court proceedings and therefore could not have raised the statute of limitations defense at any earlier time.

**23.** The exception is the Government's claim based on the 1983 tax year, for which Cohn was assessed $21,007.14 in 1984. Complaint, ¶ 15. The total due on this claim as of January 24, 1986 was $8,502.82. *Id.*

**24.** The Government also argues that it is not required to prove the existence of a timely waiver, since the defendants have the burden to plead *and prove* the affirmative defense supplied by a statute of limitations. *See United States v. Gurley,* 415 F.2d 144, 147 (5th Cir. 1969). In this circuit, courts have placed the burden of proof on the issue of timely waivers of the assessment period on the government, *United States v. Skolnick,* 149 F.Supp. 703, 706 (S.D.N.Y.1957); *United States v. Szerlip,* 169 F.Supp. 529, 530 (E.D.N.Y.1959), although the court in *Skolnick* stated that "[t]he burden of proving that the assessments were barred by lapse of time rests on the taxpayer." 149 F.Supp. at 706. The *Skolnick* court apparently felt the taxpayer sustained this burden by demonstrating that the assessment was made more than three years after the taxpayer's return was filed, shifting the burden of proving a waiver to the government. Which party bears the ultimate burden on the question of whether a timely waiver was filed appears to be an unsettled question. I need not resolve the issue at this stage because the government's submissions clearly raise a genuine issue of material fact, rendering summary judgment inappropriate. If as trial approaches either party wishes to make an *in limine* motion on the point, I will entertain the motion.

**25.** The government might argue with the "genuineness" of the issue of fact, since it takes the position that the defendants bear the burden on the issue, and that they have failed to meet the evidentiary threshold necessary to place the point at issue on a motion for summary judgment under Rule 56, F.R.Civ.P. *But see supra,* note 20.

The law is clear that parties in privity with the taxpayer in a tax court decision are bound by the *res judicata* effect of that decision to the same extent as the taxpayer. *See Brafman v. United States*, 384 F.2d 863, 864, n. 3 (5th Cir. 1967); *See also Nevada v. United States*, 463 U.S. 110, 129–30, 103 S.Ct. 2906, 2917–18, 77 L.Ed.2d 509 (1983) (*res judicata* bars relitigation of claims that could have been raised in a prior action by the parties to that action or their privies).

Defendants contend that these principles do not apply to this action because the interests they assert—i.e. legitimate ownership of the townhouse—are not derived from Cohn. The element of privity is, they conclude, lacking.

If the government's version of the facts is correct, however, the objective of this action is to levy on property which belonged to Cohn. Defendant's denial of Cohn's property interests cannot alter the inevitable conclusion that anyone claiming an interest in Cohn's property must be regarded as in sufficient privity to be bound by the *res judicata* effect of the prior tax court proceedings.

### VII.

Defendants contend that even if no statute of limitations directly bars any of the claims in this action, the equitable doctrine of laches provides them a complete defense. "The government's extraordinarily belated attempt to impose Mr. Cohn's tax liabilities on movants not only lacks merit, but also presents a classic case of inexcusable delay by the plaintiff resulting in enormous prejudice to defendants." Def. Memo in Support at 30.

In making this argument, defendants recognize that *Summerlin v. United States*, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940) and its progeny hold that the government is not bound by the doctrine of

laches.[26] More recent precedent, defendants claim, is to the contrary. *See e.g. Occidental Life Ins. Co. v. E.E.O.C.*, 432 U.S. 355, 373, 97 S.Ct. 2447, 2457–58, 53 L.Ed.2d 402 (1977); *Clearfield Trust Co. v. United States*, 318 U.S. 363 (1943); *Lane v. United States*, 633 F.2d 1384, 225 Ct.Cl. 209 (1981), *rehearing and rehearing en banc denied*, 639 F.2d 758, 226 Ct.Cl. 303 (1981). In particular, defendants argue, when the government raises equitable claims, it is subject to the equitable defense of laches. *See e.g. Lane v. United States*, *supra*, 633 F.2d at 1387.

Laches is appropriate here, defendants claim, because no conceivable reason could justify the government's delay in bring the action. The facts known to the government were known for years. Furthermore, defendants claim to be severely prejudiced by the loss of documentary and testimonial evidence,[27] and they note that the government's delay has increased the amount of its monetary claims "geometrically."

As an example of the latter point, defendants note that the government was aware of the terms of Cohn's employment contract shortly after it was executed. This action was filed eleven years later, seeking to hold the Saxe, Bacon defendants liable for amounts paid for Cohn's expenses for the entire eleven year period. No explanation is given for the delay in challenging the legitimacy of the arrangement.

The "geometric" increase in financial exposure occasioned by the government's purported delay is illustrated by the fact that the total amount of *tax* sought to be collected is approximately $1,900,000.00. The rest of the amount prayed for is attributed to penalties and interest.

I think it is fair to say that the government did not act as expeditiously as possible in pursuing Cohn and his codefendants in this matter. I also think defend-

---

**26.** In *Summerlin,* the Court stated: "It is well settled that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights." 310 U.S. at 416, 60 S.Ct. at 1020.

**27.** Some testimonial evidence has inevitably been lost to defendants through fading of memories over time, while other testimonial evidence has been lost due to the death of participants in key transactions.

ants have suffered some prejudice as a result of the government's delay. Nevertheless, I am bound by the Second Circuit's interpretation of the *Summerlin* doctrine:

> Laches is not a defense to an action filed within the applicable statute of limitations ... nor is it available against the United States, *United States v. Summerlin*, 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940).

*United States v. RePass*, 688 F.2d 154, 156 (2d Cir.1982) (citation omitted).

Defendants fail to discuss *RePass* in their papers. Instead, they rely on a line of cases applying laches to the E.E.O.C. in actions which are not governed by any statute of limitations, *see e.g. Occidental Life Ins. Co. v. E.E.O.C.*, *supra*, and on several additional cases which they contend contemplate the application of laches to claims advanced by the United States. Defendants cite *Saigh v. Commissioner*, 36 T.C. 395, 425 (1961) for the proposition that laches may be asserted against the United States in actions to collect unpaid taxes. I am referred to the following language:

> Congress has fixed the limitation time which applies in the case where no return was filed ... The statute of limitations did not commence to run and the assessment of the [liability] ... was not barred ... The prescribed time in which the Commissioner could act having been fixed, we are not at liberty to shorten or lengthen that time for any reason, including any theory of laches. *Cf.* ... *United States v. Summerlin*, 310 U.S. 414.... [60 S.Ct. 1019]

*Id.* (other citations omitted). I do not interpret this statement as authority for the proposition that laches can, in the right circumstances, bar the government's claim for unpaid taxes. Indeed, *Saigh*'s casual citation of *Summerlin* would be extraordinary if the court intended to expound such a proposition.

Defendants also refer me to *Automobile Club v. Commissioner*, 353 U.S. 180, 186, 77 S.Ct. 707, 711, 1 L.Ed.2d 746 (1956). The paragraph to which I am referred begins on page 185, and it reads:

> We must, then, determine whether the retroactive action of the Commissioner was an abuse of discretion in the circumstances of this case. The action was the consequence of the reconsideration by the Commissioner, in 1943, of the correctness of the prior rulings exempting automobile clubs, initiated by a General Counsel Memorandum interpreting § 101(9) to be inapplicable to such organizations. The Commissioner adopted the General Counsel's interpretation and proceeded to apply it, effective from 1943, indiscriminately to automobile clubs. We thus find no basis for disagreeing with the conclusion, reached by both the Tax Court and Court of Appeals, that the Commissioner, having dealt with petitioner upon the same basis as other automobile clubs, did not abuse his discretion. Nor did the two year delay in proceeding with the petitioner's case, in these circumstances, vitiate the Commissioner's action.

I infer that defendants place particular reliance on the last sentence in this paragraph for their contention that this case supports the proposition that laches is available against the government. In context, however, it is clear that the Court had no intention of expressing an opinion on the question. The Court mentioned the passage of time in the context of reviewing a course of agency action for an abuse of discretion. Its discussion has no import beyond that context.

I conclude that defendants' motion to dismiss the complaint on the ground that the government's claims are barred by laches must fail.

### Conclusion

The motions of defendants Saxe, Bacon & Bolan, P.C., Thomas Bolan, John Lang, Louis Biancone, Michael Rosen, 39 East 68th Street Corporation, Daniel Driscoll and Gerald TerAchter to dismiss or for summary judgment are denied in their entirety.

Defendant Jeffrey Schuman's motion to dismiss is denied, as is his motion for sanctions.